**Celia HENRY, Plaintiff–Appellant,**

v.

**DAYTOP VILLAGE, INC.,
Defendant–Appellee.**

**No. 393, Docket 94–7188.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 18, 1994.

Decided Dec. 1, 1994.

Charles Stephen Ralston, Theodore M. Shaw, Elaine R. Jones, NAACP Legal Defense & Educ. Fund, New York City, for plaintiff-appellant.

Parisis G. Filippatos, Douglas Menagh, Menagh, Trainor, Mundo & Falcone, P.C., New York City, for defendant-appellee.

Before: OAKES, ALTIMARI, and CABRANES, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge:

We are asked to decide whether a Title VII plaintiff who brings arguably inconsistent claims is thereby precluded from challenging her employer's proffered legitimate nondiscriminatory reason for firing her. Because her claims are not inconsistent, and because the Federal Rules of Civil Procedure explicitly authorize pleading in the alternative, we hold that her second claim may not be construed as an admission against her first claim. Accordingly, we reverse in part and affirm in part.

Plaintiff Celia Henry, a black woman, sued her employer, the defendant Daytop Village, Inc. (a provider of drug treatment services), in the United States District Court for the Eastern District of New York (I. Leo Glasser, *Judge*). Henry claimed that Daytop had fired her because she was a black woman, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.

§ 2000e *et seq.*, and 42 U.S.C. § 1981. Daytop asserted that it fired Henry for allegedly violating the corporation's disciplinary code by misrepresenting her husband's health insurance coverage and filing duplicative insurance claims. Henry responded that these allegations were merely a pretext for firing her and presented evidence that she had never misrepresented her husband's coverage to Daytop. Henry further claimed that Daytop employees who were white or male had received more lenient sanctions in the face of similar accusations.

The district court held that Henry's challenge to the severity of her punishment under Daytop's disciplinary code amounted to a constructive concession of her misconduct—a concession that precluded her from disputing the veracity of Daytop's asserted reason for firing her. The court then ruled that there was no genuine dispute of material fact as to whether Daytop's proffered reason for firing Henry was pretextual, and accordingly granted summary judgment in favor of Daytop.

## I. BACKGROUND

■ On appeal from a grant of summary judgment we must view the facts in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

Celia Henry was employed by Daytop Village in various accounting positions over a period of seventeen years. At all times her job performance was satisfactory, and in her last performance evaluation she received an overall rating of "excellent."

Daytop provides medical insurance benefits to its employees and their families through a self-insured benefit program ("Daytop Plan") which was instituted in 1984. Daytop employs an Insurance Manager, Shirley Flores, who oversees the day-to-day operation of the Daytop Plan.

The Daytop Plan pays for medical expenses of employees' spouses, to the extent that such expenses are not covered under the spouse's primary health insurance plan. In essence, Daytop acts as a secondary insurance carrier for employees' spouses. In order to coordinate benefits properly, Daytop employees are required to provide Daytop with written proof as to whether their spouses are covered by separate medical insurance, and if they are, an explanation of their coverage. If a spouse is covered by a primary carrier, the spouse must first submit any bill for medical expenses to that primary carrier. If that claim is denied, or is only partially paid, then the employee can submit the spouse's claim to the Daytop Plan. According to Daytop, the procedure for submitting such a claim entails giving the medical bill to the Insurance Manager, in this case Flores, who would then evaluate the claim by comparing the coverage terms of the primary and secondary carriers to ascertain the amount of any reimbursement. Flores would then forward that determination, along with the actual claim, to a plan administrator, who would make the actual payment to the employee.

Daytop alleged that from the time Flores became Daytop's Benefits Coordinator in 1987, until the time she became the Insurance Manager in 1989, she asked Henry on many occasions to provide her with a written description of the medical insurance coverage of Henry's husband, Ernesto Henry. According to Daytop, Celia Henry told Flores that her husband had no health insurance coverage except for hospitalization, but never provided documentation to that effect. Flores stated that she processed Henry's claims on the basis of Henry's oral representations, while continuing to press her to provide the requisite documentation.

Henry, on the other hand, denied that Flores ever requested this information from her. Henry claimed that she had never spoken with Flores about her husband's insurance, and thus had no occasion to tell Flores that her husband had only hospitalization coverage. Henry further stated that she had for years submitted proof of her husband's insurance to Daytop and that Daytop was fully aware of the nature and extent of that coverage. She claimed that she had confirmed her husband's insurance coverage with Daytop's plan administrator by written memoranda, which she allegedly saw in her

personnel file on the day she was fired, but which were not in the personnel file that was produced during discovery.

Daytop further alleged that in late 1989, Flores became suspicious of Henry's failure to produce any documentation of her husband's medical coverage. Daytop produced evidence showing that Flores had contacted Ernesto Henry's primary insurance carrier, Blue Shield of Western New York, Inc., and learned that his coverage included medical services as well as hospitalization. Further investigation revealed that Daytop had overpaid Henry a total of $760.53 for her husband's medical expenses, as a result of duplicative claims submitted by Henry. On January 16, 1990, Henry's supervisor, Yasser Hijazi, called Henry into his office and confronted her with Flores' findings. An argument ensued, and Hijazi fired Henry.

Invoking Daytop's employment policies, Henry appealed Hijazi's decision and requested an internal review of her discharge. On April 5, 1990, Daytop assembled a panel of senior employees to conduct a hearing where Henry—then represented by counsel—could make a presentation. Henry admitted receiving overpayments, but denied ever misrepresenting her husband's health insurance coverage to Daytop. In a written decision dated May 1, 1990, the review panel found that Henry had indeed misrepresented her husband's insurance coverage to Daytop, and accordingly sustained Henry's discharge.

After she was fired, Henry filed for state unemployment benefits. An evidentiary hearing was held before an administrative law judge of the New York State Department of Labor. Henry, her attorney, and representatives of Daytop appeared. In a written opinion filed March 9, 1990, the ALJ found that Henry had not misrepresented her husband's insurance coverage to Daytop, and that she was fired "under conditions which would not rise to the level of misconduct." (J.A. at 248).

On July 13, 1990, Henry filed a charge of discrimination with the Equal Employment Opportunity Commission. In a determination dated August 20, 1991, the EEOC rejected Henry's allegations, found no probable cause, and issued Henry a Notice of Right to

Sue. On November 15, 1992, Henry filed her complaint in the district court.

Daytop moved for summary judgment after discovery, contending that Henry had failed to establish a genuine issue of material fact about whether the legitimate nondiscriminatory reason for her discharge proffered by Daytop was merely a pretext for unlawful discrimination. In opposing the motion, Henry relied on her personal affirmations that she had informed Daytop of her husband's coverage, the New York ALJ's finding that she had not committed any misconduct, and other direct evidence of discrimination. Daytop responded that any evidence indicating that Henry had not violated Daytop's disciplinary code was immaterial, since she had conceded her misconduct as a matter of law by claiming that similarly situated employees who were not black women had been punished less severely for similar violations of Daytop's disciplinary code. Furthermore, Daytop argued that the direct evidence of discrimination adduced by Henry was so slight that it failed to create a genuine issue as to Daytop's motive for firing her.

The district court granted Daytop's motion for summary judgment. The court concluded that Henry had indeed conceded her misconduct as a matter of law for purposes of her Title VII claim, and that any evidence tending to show that she had not misrepresented her husband's coverage could not create an issue of material fact sufficient to defeat summary judgment. The court also found that the Daytop employees listed by Henry as having been disciplined less severely were not "similarly situated." Therefore the court concluded that Henry had failed to establish a genuine issue of material fact as to whether Daytop's proffered reason for firing her was a pretext for unlawful discrimination. This appeal followed.

## II. DISCUSSION

We review a grant of summary judgment *de novo. Gallo v. Prudential Residential Svcs., L.P.,* 22 F.3d 1219, 1224 (2d Cir.1994). Accordingly, we must look at the substantive law governing claims of intentional discrimination under Title VII, as set

forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973), and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). Under the three-part test set forth in those two landmark decisions, plaintiff must first establish a *prima facie* case of discrimination. Second, defendant must articulate a legitimate nondiscriminatory reason for the discharge. Third, plaintiff must prove by a preponderance of the evidence that the defendant's proffered reason was pretextual—that is, it was a mask for unlawful discrimination.

■ On a motion for summary judgment, the moving party bears the burden of demonstrating that no genuine issue of material fact exists. *Gallo,* 22 F.3d at 1223. It is undisputed that the parties have satisfied the first two stages of the *McDonnell Douglas* test in the present case.[1] (Appellee's Br. at 25; Appellant's Br. at 6–7). The question before this court, then, is whether Daytop has established that no genuine dispute of material fact exists as to the third step of the *McDonnell Douglas* test—that is, whether Daytop's allegation that Henry violated the Daytop disciplinary code by misrepresenting her husband's insurance coverage was a pretext for an unlawfully discriminatory firing. To this end, Henry makes two arguments. First, she argues that she has raised a genuine dispute as to whether she actually misrepresented her husband's insurance coverage to Daytop. Second, Henry argues that this dispute is material because if her version of the facts were believed, then a rational factfinder could infer that the decisionmakers at Daytop were lying—and then, based on this inference, make a finding of discriminatory animus.

Before deciding whether summary judgment was appropriate, however, we first ad-dress the threshold question whether Henry conceded her own misconduct as a matter of law. We conclude that she did not.

## A. Did Henry Concede Any Misconduct?

The district court reasoned that Henry had admitted misconduct as a matter of law when she alleged that similarly situated white or male employees were treated less harshly for similar violations of Daytop's disciplinary code. Accordingly, the court concluded that neither Henry's personal affirmations nor the New York ALJ's finding that Henry had consistently informed Daytop of her husband's medical coverage raised an issue of material fact sufficient to defeat summary judgment.

■ The district court erred in two respects. First, Henry did not "admit" misconduct as a matter of law when she claimed disparate treatment under the Daytop disciplinary code. Read in the light most favorable to the nonmoving party, *Gallo,* 22 F.3d at 1224, Henry's claim is that *regardless* of whether she was guilty of the charged violations of Daytop's disciplinary code, the sanction imposed on her—immediate discharge—was more severe than sanctions imposed on similarly situated white or male employees. Far from being a conceded fact, the question of whether Henry in fact misrepresented her husband's insurance coverage is immaterial to whether Daytop treated her in the same way that it treated white or male employees who were accused of similar misconduct.

■ Second, even if Henry did concede her misconduct as a matter of law with respect to one claim, she did not concede that misconduct with respect to her other claims. Clarifying all ambiguities in favor of the nonmoving party, *Gallo,* 22 F.3d at 1223, Henry's complaint presents two distinct claims. The first claim is that Daytop falsely accused

---

1. The district court properly held that Daytop had succeeded in articulating, through admissible evidence, a legitimate, nondiscriminatory reason for firing Henry. A defendant in a Title VII case need not prove the truth of this articulated reason in order to satisfy the second prong of the *McDonnell Douglas–Burdine* test. *Burdine,* 450 U.S. at 254–55, 101 S.Ct. at 1094–95. In other words, Henry could not prevent Daytop from satisfying the second prong by introducing evidence that the articulated reason was false.

Evidence that the reason is false, however, is central to establishing pretext under the third prong of the *McDonnell Douglas–Burdine* test. As discussed below, the district court erred in refusing to consider Henry's evidence that she was innocent of any misconduct.

Henry of violating the disciplinary code in order to fire her. The second claim, as stated above, is that regardless of whether Henry had in fact misrepresented her husband's medical insurance coverage to Daytop, the particular disciplinary sanction imposed on her—immediate discharge—was more severe than sanctions imposed on similarly situated white or male employees. In this respect, Henry's claims closely parallel the plaintiff's challenges to a university disciplinary proceeding on grounds of gender bias in *Yusuf v. Vassar College*, 35 F.3d 709 (2d Cir.1994). In that case, we held that such claims

> can be expected to fall generally within two categories. In the first category, the claim is that the plaintiff was innocent and wrongly found to have committed an offense. In the second category, the plaintiff alleges selective enforcement. Such a claim asserts that, regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender. Plaintiffs may plead in the alternative that they are in both categories. . . .

*Yusuf,* 35 F.3d at 715. Under Rule 8(e)(2) of the Federal Rules of Civil Procedure, a plaintiff may plead two or more statements of a claim, even within the same count, regardless of consistency.[2] *Riverwoods Chappaqua Corp. v. Marine Midland Bank,* 30 F.3d 339, 343 (2d Cir.1994) ("[A] party may properly submit a case on alternative theories."). "The inconsistency may lie either in the statement of the facts or in the legal theories adopted. . . ." 2A JAMES W. MOORE & JO D. LUCAS, MOORE'S FEDERAL PRACTICE ¶ 8.32, at 8–214 to 8–215 (2d ed. 1994). The current federal rules are designed to afford greater flexibility than their predecessors:

> Common law and code practice condemned inconsistency in pleadings because it was believed that a pleading containing inconsistent allegations indicated falsehood on its face and was a sign of a chicanerous litigant seeking to subvert the judicial process. All too frequently, however, valid claims were sacrificed on the altar of technical consistency. In order to avoid the constrictions of the early practice, the draftsmen of the federal rules sought to liberate pleaders from the inhibiting requirement of technical consistency.

5 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1283, at 533 (2d ed. 1990). The flexibility afforded by Rule 8(e)(2) is especially appropriate in civil rights cases, in which complex inquiries into the parties' intent may sometimes justify raising multiple, inconsistent claims. *See, e.g., MacFarlane v. Grasso,* 696 F.2d 217, 224–25 (2d Cir.1982) (holding that § 1983 plaintiff conceded existence of disputed agency policy only to the extent that he challenged the constitutionality of that policy, but not for purposes of other claims); *Wright v. Olin Corp.,* 697 F.2d 1172, 1184 (4th Cir. 1982) ("[I]t is often appropriate to assess particular Title VII claims and defenses alternatively under different theories.").

 Pursuant to Rule 8(e)(2), therefore, we may not construe Henry's first claim as an admission against another alternative or inconsistent claim. *See MacFarlane,* 696 F.2d at 224–25; *McCalden v. California Library Ass'n,* 955 F.2d 1214, 1219 (9th Cir. 1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 2306, 119 L.Ed.2d 227 (1992); *Molsbergen v. United States,* 757 F.2d 1016, 1018–19 (9th Cir.) ("In light of the liberal pleading policy embodied in Rule 8(e)(2), . . . a pleading should not be construed as an admission against another alternative or inconsistent pleading in the same case. . . ."), *cert. dismissed,* 473 U.S. 934, 106 S.Ct. 30, 87 L.Ed.2d 706 (1985). Accordingly, even if Henry's claims were somehow inconsistent—

---

**2.** Fed.R.Civ.P. 8(e)(2) provides:

A party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insuf-

ficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds. All statements shall be made subject to the obligations set forth in Rule 11.

which they are not, in our view—we could and would entertain them both. We now examine each claim in turn.

### B. *Henry's Innocence Claim*

With respect to Henry's first claim—that she was falsely accused of violating the disciplinary code—it is highly material whether or not she informed Daytop officials of her husband's insurance coverage. If Henry's evidence were believed, then Daytop officials would have known that she had not misrepresented anything, and had not violated the Daytop disciplinary code. Once the elements of a *prima facie* case have been established, a finding of discriminatory intent may be grounded solely in disbelief of an employer's proffered reason for discharge, especially if accompanied by a suspicion of mendacity. *St. Mary's Honor Ctr. v. Hicks,* — U.S. —, —, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993). Accordingly, if a rational jury accepted Henry's version of the facts, then it might conclude that Daytop had trumped up false charges as a pretext for firing her. The question then arises whether Henry has presented enough evidence to create a genuine dispute over whether she did, in fact, misrepresent her husband's insurance coverage to Daytop.

Henry argues that her affidavits raise a genuine dispute as to whether she actually misrepresented her husband's coverage. In support of her position, Henry affirmed the following: (1) Flores, Daytop's benefits manager, never asked Henry about her husband's coverage; (2) Henry had on numerous occasions submitted proof of her husband's coverage to Daytop; (3) Henry saw memoranda confirming these facts in Daytop's personnel files, but those memoranda subsequently disappeared. Additionally, she pointed out that the ALJ for the New York Department of Labor had found at an evidentiary hearing that Henry had not misrepresented her husband's coverage to Daytop.

Henry does not claim that the ALJ's findings have any preclusive effect in this case. Rather, she asserts that the ALJ's findings lend credence to her claim that a genuine dispute exists as to whether she actually misrepresented her husband's insurance coverage. Although neither party addresses the issue, we note that the ALJ's decision would be admissible evidence under Rule 803(8)(C) of the Federal Rules of Evidence, which permits the admission of "factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." The sweep of this rule encompasses records of administrative proceedings. *Chandler v. Roudebush,* 425 U.S. 840, 863 n. 39, 96 S.Ct. 1949, 1960 n. 39, 48 L.Ed.2d 416 (1976); 4 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S EVIDENCE, ¶ 803(8)[03], at 803–279 & n. 12 (1994).

Drawing all reasonable inferences in favor of Henry, the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), we hold that the ALJ's decision and Henry's assertions based on personal knowledge, taken together, did create a genuine dispute as to whether Henry actually lied about her husband's insurance coverage. To the extent that a reasonable jury might decline to credit Daytop's proffered reason for firing Henry—especially if coupled with a suspicion that Daytop had lied about that reason—the jury could reasonably infer discriminatory intent. *St. Mary's Honor Ctr.,* — U.S. at —, 113 S.Ct. at 2749. Accordingly, Henry has established a genuine dispute of material fact with respect to her first claim: that she was innocent of the charges leveled at her by Daytop.

### C. *Henry's Selective Enforcement Claim*

Henry's second claim is that Daytop disciplined her disproportionately harshly because she was a black woman, as evidenced by allegedly favorable treatment accorded similarly situated employees who were white, male, or both. Whether or not Henry was actually guilty of any misconduct has no bearing on the resolution of this disparate treatment claim: the court must consider only whether Henry has sufficiently established a pattern of disparate treatment based on race or gender, from which a rational factfinder could infer unlawful discriminatory animus on the part of Daytop. We agree

with the district court's finding that Henry failed to adduce evidence sufficient to create a genuine issue about whether such a pattern was present.

■ For a selective enforcement claim to reach a jury, the plaintiff must adduce evidence consisting of more than mere conclusory or unsubstantiated statements. *See Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985). Henry failed to meet this burden. Her statement of material facts in dispute alleged that ten named persons, all white, male, or both, "charged by the defendant with misconduct, were allowed to remain on the payroll or resign pending the disposition of charges against them" (J.A. at 262), but as the district court noted, Henry failed to corroborate this allegation in any way, whether by documentation or by affidavits based on personal experience.

Further damaging Henry's allegation is the district court's finding that eight of the ten enumerated employees were not, in fact, "similarly situated" to Henry—because they either held a different occupational status, or engaged in conduct different in kind to that attributed to Henry. Although the remaining two were arguably "similarly situated," they received the same disciplinary sanction—immediate discharge—as Henry.

Inasmuch as Henry failed to corroborate her allegation that ten similarly situated white or male employees received favorable treatment for similar infractions, and failed even to show that these employees were indeed "similarly situated," we hold that the district court was correct in finding that the evidence submitted by Henry was insufficient to create a genuine dispute with respect to her selective enforcement claim.

### III. CONCLUSION

To summarize:

1. We vacate the judgment and remand the case for further proceedings with respect to Henry's first claim, that Daytop's proffered legitimate nondiscriminatory reason for firing her was a pretext for unlawful discrimination.

2. We affirm the judgment of the district court with respect to Henry's second claim, that similarly situated white or male employees were treated more favorably by Daytop.