Lamont **HAYWOOD**, Plaintiff,

v.

**HERITAGE CHRISTIAN HOME, INC.,**
**and Susan Turnquist, Defendants.**

No. 95–CV–6206L.

United States District Court,
W.D. New York.

Sept. 15, 1997.

Nira T. Kermisch, Rochester, NY, for Plaintiff.

William E. Easton, Gullace & Easton, Rochester, NY, Lonny H. Dolin, Karen R. Castner, Dolin & Associates, P.C., Rochester, NY, for Defendants.

## DECISION AND ORDER

LARIMER, Chief Judge.

This is a discrimination law suit, brought pursuant to Title VII, 42 U.S.C. § 2000–e *et seq.*, 42 U.S.C. § 1981, and New York Executive Law § 296. Plaintiff Lamont Haywood ("plaintiff" or "Haywood") claims that defendants Heritage Christian Home, Inc. ("Heritage") and Susan Turnquist ("Turnquist") (collectively "defendants") refused to hire him because of his race. Pending before the

Court is defendants' motion for summary judgment.

## BACKGROUND

In July 1994, Haywood, a black male, responded to a newspaper advertisement placed by Heritage for full-time and part-time resident counselors for disabled individuals. At this time, Haywood had a full-time day job, but was interested in obtaining a second job. According to Haywood, he was qualified for the position, having worked previously with disabled individuals.

On August 4, 1994, Turnquist interviewed plaintiff for the available positions, which required employees to start work at 4:00 p.m. at the latest and to work some overnight shifts from 12:00 midnight until 8:00 a.m. During the interview, Turnquist apparently made two notations on plaintiff's interview form that are relevant to this action. First, with respect to plaintiff's current job, Turnquist noted "work schedule 7:30–4:30—possibly he could get out early." Second, Turnquist noted on the bottom of the form "attitude would be a problem-he knows it all!" On August 11, 1994, Haywood received a letter, informing him that more qualified candidates had been selected for the positions.

A week or so later, another advertisement appeared in the newspaper for full-time and part-time resident counselor positions with Heritage. Haywood maintains that he called Heritage and was told by Turnquist that the advertisement was out dated and that there were, in fact, no positions available. Moments later, Haywood's girlfriend, Melissa Anzalone, allegedly called Heritage and was told by Turnquist that there were many positions available, and she was invited to come down for an interview. Haywood claims that even though his girlfriend, who is white, had no prior experience working with disabled individuals, had a full-time day job, and was taking at least two evening classes, she was offered a position.

Further, just prior to Haywood's interview, Zenrose Genias, a black woman, interviewed for the resident counselor position. Genias, who had extensive experience working with disabled individuals, was told by Turnquist that she was overqualified for the position.

Plaintiff commenced the instant action, alleging that he was discriminated against in employment because of his race in violation of Title VII, 42 U.S.C. § 1981, and New York Executive Law § 296. Defendants move for summary judgment on the grounds that plaintiff is unable to establish a *prima facie* case of discrimination. Further, even if plaintiff were able to establish a *prima facie* case of discrimination, defendants claim that plaintiff is unable to rebut their legitimate, nondiscriminatory reasons for the decision not to hire him and establish that race was the motivating factor. Defendants also move for summary judgment on plaintiff's Title VII claim against Turnquist on the ground that Turnquist may not be sued in her individual capacity under Title VII.

## DISCUSSION

### I. Legal Standards

#### A. Summary Judgment

Summary judgment will be granted if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists only if the record, taken as a whole, could lead a reasonable trier of fact to find in favor of the non-movant. *Altman v. New York City Health & Hosps. Corp.*, 100 F.3d 1054, 1060–61 (2d Cir.1996).

The burden of demonstrating the absence of any genuine issue of material fact rests on the moving party, *Henry v. Daytop Village, Inc.*, 42 F.3d 89, 94 (2d Cir.1994), and all ambiguities and inferences that may be reasonably drawn from the facts must be viewed in the light most favorable to the non-moving party. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223 (2d Cir.1994). To defeat summary judgment, however, the non-moving party must go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

## B. Discrimination Claims

 Discrimination claims brought under Title VII, 42 U.S.C. § 1981, and New York Executive Law § 296 are governed by the three-part analytical framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and later refined in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). This framework is not intended to be "a rigid ritual, but simply an orderly way to evaluate proof when discrimination is claimed." *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1112 (2d Cir.1988).

Plaintiff has the initial burden of establishing a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine*, 450 U.S. at 252–53, 101 S.Ct. at 1093–94. In a failure-to-hire case based on race, a *prima facie* case is established if plaintiff demonstrates that: (1) he is a minority; (2) he applied for and was qualified for a position for which the employer was seeking applicants; (3) he was rejected despite his qualifications; and (4) after his rejection, the position remained open and the employer continued to seek applicants with plaintiff's qualifications. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine*, 450 U.S. at 253 n. 6, 101 S.Ct. at 1094 n. 6. The showing that plaintiff must make as to the elements of a *prima facie* case "is not onerous," but merely *"de minimis."* *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203–04 (2d Cir.1995); *Sweeney v. Research Found.*, 711 F.2d 1179, 1184 (2d Cir.1983).

If plaintiff establishes a *prima facie* case, then the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine*, 450 U.S. at 254–55, 101 S.Ct. at 1094–95.

If the employer produces such evidence, then the burden shifts back to the plaintiff to prove that the employer's asserted reasons for its action were false and that discrimination was the real reason. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 2751–52, 125 L.Ed.2d 407 (1993). This ultimate burden may be carried by the production of additional evidence or it may be carried by reliance upon the evidence comprising plaintiff's *prima facie* case. *Cronin*, 46 F.3d at 203; *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir.1994). Therefore, "unless the employer has come forward with evidence of a dispositive nondiscriminatory reason as to which there is no genuine issue and which no rational trier of fact could reject, the conflict between the plaintiff's evidence establishing a *prima facie* case and the employer's evidence of a nondiscriminatory reason reflects a question of fact to be resolved by the factfinder after trial." *Cronin*, 46 F.3d at 203.

## II. The Instant Case

### A. Plaintiff's Discrimination Claims

 Here, Haywood has the initial burden of establishing a *prima facie* case of discrimination. Defendants move for summary judgment on the ground that plaintiff is unable to do so. Specifically, defendants maintain that plaintiff is unable to demonstrate that he was qualified for the position. I disagree.

 The law requires "only a minimal showing of qualification to establish a *prima facie* claim." *Owens v. New York City Hous. Auth.*, 934 F.2d 405, 409 (2d Cir.1991). Essentially, plaintiff need only demonstrate that he "possesses the basic skills necessary for the performance of [the] job." *Powell v. Syracuse Univ.*, 580 F.2d 1150, 1155 (2d Cir. 1978). I find that plaintiff has made the requisite showing. Plaintiff has demonstrated that he previously worked in a position similar to that of resident counselor for a period of eight months and, therefore, possessed the "basic skills" necessary for the position—*i.e.*, the ability and temperament to work effectively with disabled individuals.

In addition to establishing that he was qualified for the position, plaintiff has demonstrated that he belongs to a racial minority, that despite his qualifications, he was rejected, and that after his rejection, the position remained open and the defendants continued to seek applicants. Accordingly, plaintiff has met his *de minimis* burden and adequately established a *prima facie* case of discrimination.

■ The burden now shifts to defendants to articulate legitimate, nondiscriminatory reasons for plaintiff's rejection. I find that defendants have met this burden. Defendants maintain that plaintiff was not hired initially because: (1) he could not work the required hours; (2) he did not want to be trained; (3) he did not show a legitimate commitment to working with severely disabled individuals; and (4) he exhibited a poor attitude and poor communications skills. Defendants maintain that plaintiff was not hired in response to the second advertisement because: (1) he already had been rejected; and (2) Heritage was hiring only female counselors at that time. Defendants proffered reasons for the decision not to hire plaintiff obviously are sufficient to meet their burden of advancing legitimate, nondiscriminatory bases for the adverse employment decision.

■ In this circumstance, plaintiff must demonstrate that there are genuine issues of fact regarding whether defendants' asserted reasons are false and whether discrimination was the real reason. Viewing the facts, as I must, in the light most favorable to plaintiff, I find that plaintiff has met this burden. Plaintiff has set forth sufficient facts from which a jury could infer that defendants' asserted reasons for his rejection are false and simply unworthy of belief.

For example, defendants claim that they declined to hire plaintiff because his current work schedule—as noted on the interview form as 7:30 a.m. until 4:30 p.m.—conflicted with the required hours for both the full-time and part-time positions. In his affidavit, plaintiff maintains that Turnquist fabricated the statement on the interview form regarding his hours in order to justify her denial of the job to him. In support of this theory, plaintiff submits his time sheets for the relevant period, which indicate that his work schedule varied from 7:30 a.m. until 4:00 p.m. or from 8:30 a.m. until 5:00 p.m., but never from 7:30 a.m. until 4:30 p.m. Plaintiff claims that he informed Turnquist that he had a flexible work schedule and could adjust it to accommodate a second job with Heritage.

More importantly, plaintiff submits the affidavit of Melissa Anzalone, in which she states that she had a full-time day job, was taking evening classes toward a master's degree, and had very little experience working with disabled individuals. According to Anzalone, Heritage told her that they would accommodate her work schedule and that she did not have to worry about any conflicts. For example, Heritage informed her that her training schedule would be flexible and that she could schedule her overnight shifts on weekend evenings so that it would not interfere with her other job.

I find, therefore, that there is a material issue of fact as to whether defendants really rejected plaintiff because of his inability to work the required hours or whether this proffered justification is false. There is evidence before me that plaintiff was told by defendants that his current work schedule barred his employment with Heritage, while at least one other applicant—a white individual—was told by defendants that her current work schedule would be readily accommodated by Heritage. A jury could infer from this evidence that defendants' actions were racially motivated.

Defendants also maintain that they denied plaintiff the job because he was resistant to being trained. In her affidavit, Turnquist states that she discussed with plaintiff that his work schedule would make it difficult to be trained. Turnquist claims that Haywood then tried to convince her that he did not need to be trained because he had previously worked in a similar capacity and currently volunteered in that same capacity. Plaintiff disputes Turnquist's version of events. In his affidavit, Haywood states that he never insisted that he did not need to be trained. According to Haywood, he merely explained to Turnquist the training that he already had received so that Heritage would realize that it was getting a qualified individual. The positions of plaintiff and defendants are diametrically opposed. Accordingly, a material issue of fact exists for the jury as to whether defendant truly declined to hire plaintiff because he refused to be trained or whether this reason is simply unworthy of belief.

Defendants also claim that plaintiff was not hired because he did not exhibit the personality traits Heritage required of a resi-

dent counselor, such as commitment to the job, patience, empathy, and gentleness. To prove the falsity of this reason, plaintiff submitted the affidavits of Cathy Lovejoy and Donna Benincasa. Lovejoy, the individual who had previously interviewed and hired plaintiff for a similar position, states that it was clear to her during her interview with plaintiff that he was committed to working with disabled individuals and had compassion for them. Based on observations made during the interview, Lovejoy determined that plaintiff would be a good counselor for disabled individuals. Benincasa, an individual who organized functions for disabled individuals, states that plaintiff was a dedicated volunteer and compassionate toward disabled individuals. According to Benincasa, plaintiff was very committed to working with disabled individuals. Certainly, Turnquist's impression of plaintiff was very different from that of his prior supervisors. It is for the factfinder to decide, therefore, whether Turnquist's impression is valid and constitutes a legitimate, non-discriminatory reason for plaintiff rejection or whether it is simply false.

Finally, defendants maintain that plaintiff was not hired because he communicated poorly during the interview. Specifically, Turnquist claims that Haywood constantly interrupted her and that his answers were curt, abrupt, and impatient. Apparently, it was these qualities which prompted Turnquist to write on the form "attitude would be a problem—he knows it all!" In his affidavit, plaintiff states that he neither interrupted Turnquist nor displayed an impatient attitude. Plaintiff maintains that the notation on the interview form was simply made to justify Turnquist's denial of the position to him. In support of his position, plaintiff again refers the Court to the affidavits of Lovejoy and Benincasa. Lovejoy states that during her interview with plaintiff, "his general attitude was good, he did not interrupt, did not display any impatience, and presented with good personal communication skills, and good listening skills." Lovejoy Aff. ¶ 2. Lovejoy hired plaintiff for the position primarily based on her observations made during the interview and was not disappointed with his work. Benincasa commented that plaintiff's attitude was always excellent and

that there was never any problem. Benincasa also remarked that plaintiff's communication skills were good, he was very patient, and listened well. Again, Turnquist had a different impression of plaintiff than his other supervisors. It is not for this Court on a summary judgment motion to resolve this conflict. It is for the factfinder to decide if Turnquist's decision to reject plaintiff was for the stated reasons or whether those reasons were false and a pretext for a discriminatory reason.

Defendants maintain that when plaintiff inquired about the second advertisement, he was not eligible because he already had been rejected and because Heritage was seeking only female counselors at that time. However, when plaintiff called Turnquist and inquired about the advertisement, Turnquist did not mention these two factors, but merely said that the advertisement was old and that there were no positions available. Moments later when Anzalone called, Turnquist told her that there were many positions available. These facts establish that at the very least, Turnquist was not completely honest with plaintiff. At no time did Turnquist tell Anzalone or plaintiff that there were only positions available for woman nor did the advertisement in the paper indicate that men should not apply.

Plaintiff also has set forth sufficient facts from which a jury could infer that his race was a motivating factor in defendants' decision not to hire him. For example, there is evidence before me that plaintiff, who had experience working with disabled individuals, was rejected and informed that more qualified individuals were selected. Apparently, more qualified individuals, however, were not selected because defendants continued to advertise. When plaintiff inquired about the second advertisement, he was told that the advertisement was old and that there were no positions available. Yet, when another individual called, she was told that there were many positions available and that she should come in for an interview. This woman, who was white, had very limited experience working with disabled individuals and, like plaintiff, had limited availability, but was offered the job. Further, during this same

time period, a qualified black woman was rejected for the job because she was "overqualified."

 Heritage attempts to defeat plaintiff's claim of discrimination by asserting that Heritage hired two black individuals during the same time period. Heritage claims that on July 31, 1994, it hired Missprecious Patrick, a black female, as a full-time resident counselor. Although Patrick did not have any prior experience, Heritage maintains that it hired her because she displayed compassion, patience, commitment, and excellent listening skills. Heritage claims that on August 21, 1994, it hired Cameron Bailey, a black male, as a part-time resident counselor. Although Bailey also did not have any prior experience, Heritage alleges that it hired him because he exhibited patience, understanding, commitment, and excellent communication skills. While I find that this is evidence that the jury may consider in evaluating plaintiff's discrimination claim, I do not find it dispositive. "Title VII does not permit the victim of a facially discriminatory policy to be told that he has not been wronged because other persons of his or her race ... were hired." *Connecticut v. Teal,* 457 U.S. 440, 455, 102 S.Ct. 2525, 2535, 73 L.Ed.2d 130 (1982); *Meiri v. Dacon,* 759 F.2d 989, 996 n. 9 (2d Cir.1985).

All the above facts are sufficient to create an issue for the jury as to whether plaintiff's race was the true reason for his rejection. The proof certainly is not conclusive and the employer may have explanations for this conduct that dissuade the jury that race was a motivating factor. But, the facts are sufficient for a reasonable jury to determine otherwise. The Second Circuit has admonished district courts to exercise caution in discrimination cases where the employer's intent is at issue. *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1224 (2d Cir.1994). I find that this admonition is particularly appropriate here. These matters are not for the Court to resolve on this motion, but for the jury at trial.

**B. Plaintiff's Title VII Claim Against Turnquist**

 To the extent that plaintiff's complaint asserts a claim against Turnquist in her individual capacity under Title VII, this claim fails as a matter of law and is dismissed. *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1317 (2d Cir.1995) (holding that "an employer's agent may not be held individually liable under Title VII").

### CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is denied in part and granted in part.

IT IS SO ORDERED.