**David CUNLIFFE, Plaintiff,**

v.

**SIKORSKY AIRCRAFT CORPORATION, Defendant.**

**No. CIV.3:96CV01595(JBA).**

United States District Court,
D. Connecticut.

March 31, 1998.

Thomas E. Mangines, Brian A. Mangines, Mangines & Mangines, Fairfield, CT, Daniel H. Kryzanski, Stratford, CT, for Plaintiff.

Gary L. Lieber, Anessa Abrams, Schmeltzer, Aptaker & Shepard, Washington, DC, Edward J. Dempsey, United Technologies Corp., Hartford, CT, for Defendant.

### RULING AND ORDER

ARTERTON, District Judge.

The plaintiff David Cunliffe, a Caucasian male, sued his former employer, Sikorsky Aircraft Corporation (Sikorsky), under Title VII of the Civil Rights Act of 1964, charging that Sikorsky discriminated against him on the basis of his race. Mr. Cunliffe also charges that Sikorsky negligently inflicted emotional distress upon him. The case comes before the Court on a motion for Summary Judgment by the defendant, Sikorsky. [Doc. # 39]

In 1980, Mr. Cunliffe began working for Sikorsky as a shipping clerk in Sikorsky's Meyers facility. Mr. Cunliffe maintained a consistently satisfactory or better performance rating throughout his employment. In April of 1994, Sikorsky received a complaint from a female worker in the Meyers facility that Daniel Willis was harassing her and another female worker named Denise Santagata. The supervisor, Thomas Trotta, questioned Ms. Santagata. When questioned, Ms. Santagata stated that Mr. Willis was a nuisance, but added that Willis's actions were minor in comparison to what Mr. Cunliffe had been doing.

Since 1991, Sikorsky has maintained a corporate policy against sexual harassment. That policy is contained in the Hourly Employee Manual and the Company's General Rules of Conduct. Under company policy, Sikorsky must investigate allegations of harassment. Pursuant to this policy, investigator John Williams and Diane Mallory, Manager of Staffing and Equal Opportunity Programs, interviewed Ms. Santagata on April 12, 1994. In her statement dated that same day, Ms. Santagata discussed her experiences with the plaintiff, Mr. Cunliffe and with Mr. Willis.[1] Ms. Santagata relayed several incidents in which the plaintiff, Mr. Cunliffe, touched her thighs and her breasts and made sexual comments. Three other co-workers interviewed recounted incidents where they had observed Mr. Cunliffe with Ms. Santagata.

On April 15, Mr. Williams interviewed Mr. Cunliffe in the presence of Mr. Cunliffe's union steward. (Plaintiff's Responses to Defendant's First Set of Requests for Admissions, Ex. B of Decl. of Anessa Abrams Esq., in Support of Defendant's Motion for Summary Judgment). Mr. Cunliffe was informed that Ms. Denise Santagata had made allegations of sexual harassment against him. *Id.* Mr. Cunliffe denied the allegations; but, Mr. Cunliffe did not have the opportunity to confront directly Ms. Santagata at that interview.

After the interview with the plaintiff, investigator Williams met with Manager Kevin Doheny, Supervisor Thomas Trotta, and Employee Relations Representative John Poidomani to discuss what action the company should take. Mr. Cunliffe was terminated that same day and escorted from the premises.

Mr. Cunliffe filed a grievance that was submitted to final and binding arbitration.

---

1. In her statement, Ms. Santagata reported that back in 1993, Daniel Willis "began coming over to me and making conversation." (Santagata Statement, Diane Mallory, Decl., Ex. A). Ms. Santagata felt that Mr. Willis was bothering her. She reported the incident to Foreman Joe Dolan, who she says instructed Mr. Willis to stop, "but he never stopped." A few months before her statement, Ms. Santagata again reported that Mr. Willis "came over to me and was bothering me, staring at me, and asking me personal questions about myself." Ms. Santagata then complained to Foreman Tom Trotta. Foreman Trotta spoke to Mr. Willis and "things seemed fine for a while." Around Christmas of 1993, Ms. Santagata again reported Mr. Willis to her foreman, Mr. Trotta. Since that last incident, "with Willis at the end of 1993, there have been no further incidents."

The Arbitrator, Herbert L. Marx, concluded that Mr. Cunliffe was terminated for just cause. (In re Matter of the Arbitration between United Tech. Corp., Sikorsky Aircraft Div. and Teamsters Union Local 1150, Opinion and Award, July 26, 1995). The arbitrator heard from the plaintiff and a number of witnesses who testified on his behalf. The arbitrator also heard from Denise Santagata as well as other witnesses who corroborated parts of her story. The arbitrator was left with a number questions at the conclusion of all testimony; however, he consistently noted that the company's actions were justified. First, he noted that Ms. Santagata did wait a very long time to report the events. She in fact only reported information about Mr. Cunliffe while reporting alleged misconduct by another employee. However, he then stated that "once the matter was brought to the Company's attention, there was no reason for the Company to modify its investigation simply because the reported activity covered a two-year period." (Id. at 8). The arbitrator also observed that it was difficult to justify all of Ms. Santagata's conduct, including the fact that she allowed Mr. Cunliffe to accompany her to the emissions station as a personal favor during the period in which the sexual harassment was allegedly occurring. However, the arbitrator once again concluded, "that the matter under review here is whether or not the grievant [Mr. Cunliffe] was guilty of repeated and persistent sexual harassment—and not whether [Ms. Santagata] responded in the wisest and most mature fashion." (Id.).

The arbitrator also addressed the question of whether Mr. Cunliffe was given a proper opportunity to defend himself. The arbitrator stated that "[w]hen Cunliffe was summoned for an interview, the record indicates that he had the opportunity either to prepare a statement or to check the accuracy of a statement based on the interview with him. There is insufficient basis to suggest that due process was not followed." (Id. at 8–9). In conclusion, the arbitrator stated that

[t]he grievant concedes his awareness of Company policy on harassment, and despite his flat denial, the errant behavior covered an extensive period (and was not, for example, a possibly forgivable single improper incident). In maintenance of its established policy, required under law, the Company had no reason to mitigate the penalty.... David Cunliffe was terminated for just cause.

(Id. at 10–11.).

The plaintiff sued Sikorsky in state court on July 18, 1996. Sikorsky filed a notice of removal to federal court on August 16, 1996. Mr. Cunliffe alleges that Daniel Willis, an African–American employee, was accused on two separate occasions of sexual harassment. He was suspended as opposed to being terminated for those incidents. Mr. Willis was not terminated until he was accused of sexual harassment for the third time. On this basis, Mr. Cunliffe charges that he received disparate treatment because of his race.

## SUMMARY JUDGMENT STANDARD

This court must determine whether the defendant, Sikorsky is entitled to judgment as a matter of law for plaintiff's Title VII and negligent infliction of emotional distress claims. The Second Circuit has made abundantly clear the standard district courts are to follow when considering whether to grant a motion for summary judgment. See Gallo v. Prudential Residential Svcs., 22 F.3d 1219 (2d Cir.1994). Summary judgment is appropriate in cases where "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits ... show that there is no genuine issues as to any material fact and the moving party is entitle to judgment as a matter of law." Fed.R.Civ.P. 56(c). In Gallo, the Second Circuit went on to explain:

Second, the burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists. In considering that, third, all ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought. Fourth, the moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case. When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so

slight, there is no genuine issue of material fact and a grant of summary judgment is proper.

*Gallo,* 22 F.3d at 1223–24.

The Second Circuit has stressed the special concerns that obtain when a summary judgment motion is at issue in an employment discrimination case. "When deciding whether this drastic provisional remedy should be granted in a discrimination case, additional considerations should be taken into account. A trial court must be cautious about granting summary judgment to an employer, when, as here, intent is at issue." *Gallo,* 22 F.3d at 1224. Though the Second Circuit has urged caution in granting summary judgment in discrimination cases, the court has also explained that ". . . we should not be misunderstood as suggesting that summary judgment is never appropriate in discrimination cases. . . . summary judgment remains available to reject discrimination claims in cases lacking genuine issues of material fact." *Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 40 (2d Cir.1994). With these considerations in mind, the court turns to Mr. Cunliffe's Title VII claims against Sikorsky.[2]

## DISCUSSION

### TITLE VII CLAIM

■ Two analytical frameworks exist for individual disparate treatment claims—the mixed-motive framework of *Price Waterhouse* and the prima facie/pretext framework of *McDonnell Douglas. See Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). For reasons explained below, the pretext framework is the appropriate analysis in this case.

Mr. Cunliffe contends that "[t]he present case should be analyzed in accordance with the standard set forth in Price Waterhouse because direct evidence of discrimination is present including evidence that a black employee was suspended twice prior to being terminated for sexual harassment while a [sic] the same time, the Plaintiff, a Caucasian was terminated immediately after being accused of sexual harassment." *Plaintiff's Mem. of Law in Supp. of Opposition to Defendant's Mot. for Summary Judgment,* at 4. The plaintiff misapprehends the circumstances under which the *Price Waterhouse* standard applies. *See Price Waterhouse v. Hopkins,* 490 U.S. 228, 258, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (plurality opinion). The Second Circuit recently explained that "[t]o warrant a Price Waterhouse burden shift, the plaintiff must initially show that 'an impermissible criterion was in fact a "motivating" or "substantial" factor in the employment decision.'" *Raskin v. Wyatt Co.,* 125 F.3d 55, 60 (2d Cir.1997) (internal citation omitted). The court continued,

2. Sikorsky argues that Mr. Cunliffe's Title VII claim is precluded by the collective bargaining agreement's arbitration clause. The court declines to pass on the question whether the plaintiff's Title VII claims are precluded by the arbitration provision of the collective bargaining agreement.

The court is aware that in a recent case, this Court required a plaintiff to arbitrate his § 1981 claims. *See Almonte v. Coca–Cola Bottling Co.,* 959 F.Supp. 569 (D.Conn.1997). However, in that case the Court noted that Congress had expressly encouraged the arbitration of § 1981 claims. *Almonte,* 959 F.Supp. at 574. Moreover, in another decision, the Court concluded that the failure to exhaust the available grievance procedures did not bar a plaintiff's Title VII claims. *See Claps v. Moliterno Stone Sales, Inc.,* 819 F.Supp. 141 (D.Conn.1993). This court explained that the United States Supreme Court decision in *Gilmer v. Interstate Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d

26 (1991), did nothing "to suggest that the Court abandoned or even reconsidered its efforts to protect individual statutory rights from the give-and-take of the collective-bargaining process. . . . Gilmer does not alter or undermine the protection established in Gardner–Denver against waiver of individual statutory rights through collective-bargaining agreements." *Claps,* 819 F.Supp. at 146–47. In both *DeGaetano v. Smith Barney,* 1996 WL 44226, 1996 U.S.Dist. LEXIS 1140 (S.D.N.Y.1996), and *Scott v. Merrill Lynch,* 1992 WL 245506, 1992 U.S.Dist. LEXIS 13749 (S.D.N.Y.1992), the agreement to arbitrate was found in an individual employment contract, not in a collective bargaining agreement.

In the case at hand, a collective bargaining agreement, not an individual contract, contains the arbitration clause. Moreover, the court is not persuaded that Congress has expressly approved of the practice of mandatory arbitration with respect to Title VII claims.

[b]ecause the plaintiff must show that the evidence is sufficient to allow a fact finder to infer both permissible and discriminatory motives, the plaintiff's initial burden in a Price Waterhouse mixed-motive case is heavier than the de minimus showing required to establish a prima facie McDonnell–Douglas case. The types of indirect evidence that suffice in a pretext case to make out a prima facie case—or even to carry the ultimate burden of persuasion— do not suffice, even if credited, to warrant a Price Waterhouse burden shift.... In short, to warrant a mixed-motive burden shift, the plaintiff must be able to produce a 'smoking gun' or at least a 'thick cloud of smoke' to support his allegations of discriminatory treatment.

*Raskin,* 125 F.3d at 60–61.

In this case, as in *Raskin,* a mixed-motive burden shift is neither required nor appropriate. No policy documents, nor evidence of statements or actions that could directly reflect a discriminatory attitude were shown. *See Raskin,* 125 F.3d at 60. Mr. Cunliffe produces precisely the sort of circumstantial evidence that will support a prima facie case; however, the showing for a *Price Waterhouse* burden shift is nonexistent.

The *McDonnell–Douglas* analysis is appropriate in this case. In order to establish a prima facie case of discrimination in violation of Title VII, a plaintiff who asserts that he has been wrongfully terminated must show (1) that he belongs to a protected class; (2) that he was qualified for the position; (3) that he was discharged; and (4) that the discharge occurred under circumstances giving rise to an inference of discrimination on the basis of his membership in that class. *See generally Texas Dept. of Comm. Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Once the plaintiff has

presented a prima facie case of discrimination, the defendant has the burden to produce a legitimate, nondiscriminatory reason for its action, which if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993). After the defendant has articulated a nondiscriminatory reason, the plaintiff has an opportunity to show that the reason was merely a pretext for discrimination. Pretext "may be demonstrated either by the presentation of additional evidence showing that 'the employer's proffered explanation is unworthy of credence,' *Burdine,* 450 U.S. at 256, 101 S.Ct. 1089, or by reliance on the evidence comprising the prima facie case, without more, *see St. Mary's Honor Center v. Hicks,* 113 S.Ct. at 2749, 113 S.Ct. 2742." *Chambers,* 43 F.3d at 38.

■ The court finds that for the purposes of this summary judgment motion, the plaintiff has met his prima facie case.[3] Mr. Cunliffe is a white male, he was qualified for his position, he was terminated, and he has alleged sufficient facts to show that the discharge occurred in circumstances that give rise to an inference of discrimination on the basis of his race. As the Second Circuit has noted, "the showing the plaintiff must make as to the elements of the prima facie case in order to defeat a motion for summary judgment is de minimus." *Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 204 (2d Cir.1995).

Similarly, Sikorsky has met its burden to produce a "legitimate, nondiscriminatory reason" for its action, namely that Mr. Cunliffe sexually harassed a co-worker. As the Second Circuit has noted, "Title VII places upon an employer the responsibility to maintain a

---

**3.** Sikorsky maintains that as a member of the Caucasian race, in order to prove his prima facie case, Mr. Cunliffe must also show "background circumstances to support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Olenick v. New York Tel.,* 881 F.Supp. 113, 114 (S.D.N.Y.1995). The court declines to place any such extra burden on the plaintiff in the initial stages of his case. As the United States Supreme Court recently reiterated, " '[b]ecause of the many facets

of human motivation, it would be unwise to presume as a matter of law that human beings of one definable group will not discriminate against other members of that group.' " *Oncale v. Sundowner,* —— U.S. ——, ——, 118 S.Ct. 998, 1001, 140 L.Ed.2d 201 (1998) (quoting *Castaneda v. Partida,* 430 U.S. 482, 499, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977)). In any event, Mr. Cunliffe fails to raise a genuine issue of material fact regarding pretext absent any such burden.

work place environment free of sexual harassment. The EEOC Guidelines make employers liable for sexual harassment between employees of which it knew or should have known, 'unless it can show that it took immediate and appropriate corrective action.' " *Newsday v. Long Island Typographical Union,* 915 F.2d 840, 844 (2d Cir.1990) (citing 29 C.F.R. § 1604.11(d)). The employer had not only the prerogative but an actual duty to respond to the serious allegations against Mr. Cunliffe. After the defendant has articulated its reason for action, in order for the plaintiff to defeat summary judgment,

> the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination. If the plaintiff's evidence was barely sufficient to make out a prima facie case, it may not be sufficient to establish discrimination after the defendant has proffered a neutral rationale.

*Stern v. Trustees of Columbia Univ.,* 131 F.3d 305, 312 (2d Cir.1997).

■ In this case, Mr. Cunliffe contends that the sexual harassment accusations were mere pretext for Sikorsky's action. He bases this contention on the fact that Daniel Willis, an African–American employee, was accused of sexual harassment three times and received two suspensions prior to being terminated. What Mr. Cunliffe alleges is discriminatory enforcement of the company's sexual harassment policy. *See Henry v. Daytop Village, Inc.,* 42 F.3d 89, 96–97 (2d Cir.1994). Mr. Cunliffe contends that he was terminated after one charge of sexual harassment because he is a Caucasian male. This is demonstrated by the allegedly favorable treatment accorded a similarly situated African–American male employee.

For the purposes of Mr. Cunliffe's claim, whether or not he actually sexually harassed Ms. Santagata "has no bearing on the resolution of this disparate treatment claim." *Henry,* 42 F.3d at 96. Two central issues control here. First, did Sikorsky treat a similarly-situated employee of a different race differently than it treated Mr. Cunliffe,

such that a reasonable fact-finder could infer that race was a motivating factor? Second, regardless of whether Mr. Cunliffe in fact sexually harassed Ms. Santagata, did Sikorsky act in good faith in its response to the allegations, or do circumstances permit a reasonable fact-finder to conclude that Sikorsky's stated reasons are not deserving of credence?

■ Differences in treatment are only probative if such individuals are similarly situated to the plaintiff. To be "similarly situated, the individual[ ] with whom [the plaintiff] attempts to compare [him]self must be similarly situated in all material respects." *Shumway v. United Parcel Service,* 118 F.3d 60, 64 (2d Cir.1997). Courts in this circuit have noted that:

> Employees are not 'similarly situated' merely because their conduct might be analogized. Rather, in order to be similarly situated, other employees must have reported to the same supervisor as the plaintiff, must have been subject to the same standards governing performance, evaluation, and discipline, and must have engaged in conduct similar to the plaintiff's, without such differentiating or mitigating circumstances that would distinguish their conduct or the appropriate discipline for it.

*Francis v. Runyon,* 928 F.Supp. 195, 203 (E.D.N.Y.1996) (quoting *Mazzella v. RCA Global Communications, Inc.,* 642 F.Supp. 1531, 1547 (S.D.N.Y.1986)).

Mr. Cunliffe has consistently stated that Mr. Willis received three complaints of sexual harassment and that he was suspended twice before being terminated. However, Sikorsky contends that the charges against Mr. Willis were substantially different from the charges against Mr. Cunliffe. Thaddeus Garbien, manager of Human Resources, stated in his sworn declaration that

> [a]lthough both Willis and Cunliffe were disciplined for sexual harassment, the underlying factors that the company considered were completely different: a. Though serious, the allegations against Willis were not as egregious as the allegations against Cunliffe. The allegations against Willis

did not involve physical acts of sexual touching and battery as in the case of Cunliffe. The allegations against Cunliffe consisted of non-isolated instances of unwanted physical sexual advances that would be deemed by any objective person as both vile and outrageous, as well as an assault and battery. Accordingly, suspension of Cunliffe would have been an insufficient penalty for his conduct. b. All of the allegations against Cunliffe were corroborated by fellow employees. Many of the allegations against Willis were uncorroborated.

(Declr. of Thaddeus F. Garbien in Support of Defendant's Motion for Summary Judgment, at 10.)

In contrast to Sikorsky, Mr. Cunliffe has made no attempt in the record to compare and contrast his alleged behavior with Mr. Willis's behavior, nor has plaintiff contested that Mr. Willis's alleged actions were of a less serious nature than his own. Mr. Cunliffe primarily contends that he did not commit any sexually harassing acts. He also attempts to attack the credibility of Ms. Santagata and the other witnesses who confirmed her allegations. Mr. Cunliffe additionally argues that he was not afforded a sufficient opportunity to respond to the accusations or to face his accuser. None of these contentions have any bearing on his disparate treatment claim.

The heart of a disparate treatment claim such as this is a showing of comparable conduct by an individual who received different treatment. That showing requires concrete allegations regarding what occurred in Mr. Willis's case. Mr. Cunliffe has no burden to prove these allegations at this stage; but, he must raise issues of material fact. The Court would first examine the substance of Mr. Cunliffe and Mr. Willis's behavior; however, Mr. Cunliffe has provided nothing for the Court to evaluate in this regard. Mr. Cunliffe never alleges, in briefs or sworn statements, what exactly Mr. Willis's conduct was. Mr. Cunliffe does not allege that Mr. Willis's conduct was comparable to his own, nor does he contest Mr. Garbien's assessment of Mr. Willis's conduct.

The Court would next examine the process each man received; however, Mr. Cunliffe again provides nothing to evaluate. Mr. Cunliffe never explains what process and opportunity to be heard Sikorsky afforded Mr. Willis with regard to each incident of alleged sexual harassment. Mr. Cunliffe's charge that he was given an inadequate opportunity to be heard means nothing without a comparison to the process Mr. Willis received.

Without specific allegations comparing substance and process, the discipline Mr. Willis received is irrelevant. An employer has a right and a duty to respond accordingly to the nature and quality of an employee's sexually harassing conduct. The number of allegations, absent more, tells the Court little about the comparable conduct and treatment of Mr. Cunliffe and Mr. Willis. Mr. Cunliffe has provided nothing on this record with which to compare his conduct and treatment for that conduct. As a result, this Court has nothing from which to draw a material question of fact regarding pretext.

For a claim of disparate treatment based on discriminatory enforcement to reach a jury, "the plaintiff must adduce evidence consisting of more than mere conclusory or unsubstantiated statements." *Henry*, 42 F.3d at 97; *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985). Mr. Cunliffe has failed to corroborate his assertion that Mr. Willis received more favorable treatment "in any way, whether by documentation or by affidavits based on personal knowledge." *Henry*, 42 F.3d at 97. Mr. Cunliffe failed to show that Mr. Willis was indeed similarly situated.

■ The second significant issue is whether Sikorsky acted in good faith in response to the allegations of sexual harassment against Mr. Cunliffe. In this case "the incontrovertible evidence" shows that Sikorsky "believed in good faith" that Mr. Cunliffe engaged in sexual harassment. *Agugliaro v. Brooks Bros.*, 927 F.Supp. 741, 747 (S.D.N.Y.1996); *see also Newman v. Montefiore Med. Center*, 1996 WL 741599 (S.D.N.Y.1996). In a discrimination action, "a court is not to second-guess the defendant's judgment as long as it is not for a discriminatory reason." *Francis*, 928 F.Supp. at 203. Though Mr. Cunliffe has vigorously denied the allegations against him, he has never alleged that Sikorsky fabricated either the allegations of Ms. Santagata or the

corroborating testimony of three other witnesses, or that these allegations were not the reason Sikorsky fired him.

■ In order to show pretext based on discriminatory enforcement of the sexual harassment policy, "it [is] incumbent upon the plaintiff to present specific facts—not conclusory allegations, speculation, surmise, or feelings—to show the existence of genuine issues for trial." *Agugliaro,* 927 F.Supp. at 748. The court has analyzed the record, along with the inferences that may be reasonably drawn from it, and concludes that it does not raise a material question of fact as to whether the Mr. Cunliffe was a victim of discrimination. Accordingly, the defendant's motion for summary judgment is granted to Sikorsky with respect to the Title VII claim.

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIM

■ Mr. Cunliffe also alleges negligent infliction of emotional distress. Where a federal court dismisses the claim upon which federal question jurisdiction was based, jurisdiction over any pendent state claim is brought into question. The jurisdictional statute provides that "[t]he district court may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3) (1997). The district court must weigh " 'the values of judicial economy, convenience, fairness, and comity' in light of the facts of the case and the stage of the litigation." *Larkin v. Town of West Hartford,* 891 F.Supp. 719, 731 (D.Conn.1995) (quoting *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)). In its sound discretion, this court declines to exercise jurisdiction over the state claim that remains.

## CONCLUSION

For the foregoing reasons, defendant's Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED.