Michael J. DiLEGGE, Plaintiff,

v.

James D. GLEASON, individually and as Fire Commissioner of the City of Mt. Vernon, N.Y., Ernest D. Davis, individually and as Mayor of the City of Mt. Vernon, N.Y., and the City of Mt. Vernon, N.Y., Defendants.

No. 00 CIV. 1706(CLB).

United States District Court,
S.D. New York.

Feb. 13, 2001.

Lovett & Gould, White Plains, NY, for Plaintiff.

Ernest R. Stolzer, Rains & Pogrebin PC, Mineola, NY, for Defendants.

## MEMORANDUM & ORDER

BRIEANT, District Judge.

By motion filed November 9, 2000, heard and fully submitted on February 9, 2001, Defendants move for summary judgment dismissing the First Amended Complaint in this employment discrimination case, in its entirety. Plaintiff filed opposition papers on February 1, 2001. Defendants filed reply papers on February 7, 2001.

Plaintiff alleges that by twice denying him promotion in the Fire Department of the City of Mt. Vernon, New York, the Defendants discriminated against him in violation of federal law on the basis of his race and union activities and retaliated against him for having filed a Complaint for redress of these grievances.

Mr. DiLegge, who is caucasian, has been a fire fighter with the City of Mount Vernon Fire Department since September 1986. In August 1999, Mr. DiLegge was the second-ranked candidate on a Civil Service eligible list for promotion to one of two open Fire Lieutenant positions. The successful candidates were the first and third-ranked individuals, fire fighter John Koch, who is caucasian, and fire fighter Edward Stevenson, who is African–American. Mr. DiLegge claims that he was passed over for promotion in August 1999 because of his race in violation of Title VII and the Fourteenth Amendment of the Constitution of the United States, and in retaliation for his union activities, in viola-tion of the First Amendment of the Constitution of the United States.

On September 23, 1999, Mr. DiLegge filed a Charge of Discrimination with the Equal Employment Opportunity Commission, and received a Notice of Right to Sue on December 7, 1999. On July 7, 2000, subsequent to the filing of the Complaint in this action, Plaintiff was again passed over for promotion to Fire Lieutenant, although he was at that point ranked first on the Civil Service eligible list for that position. Mr. Robert Jenks, a caucasian, who resided in Dutchess County, was appointed. This second event is the basis for Mr. DiLegge's supplemental claims for violation of his first Amendment right to petition government for redress of grievances, and for retaliation in violation of Title VII, which are set forth in the First Amended Complaint.

On December 24, 1999, Defendant Fire Commissioner James D. Gleason who was the decision maker for the City of Mt. Vernon in these promotional matters, suffered a debilitating stroke and is, therefore, unable to testify or be deposed in this action, and will remain unavailable as a witness.

Defendants seek summary judgment in their favor dismissing all of these claims on the ground that the Plaintiff has failed to proffer sufficient evidence in support of his claims. In addition, Defendants assert that Plaintiff's Title VII claim against Mayor Davis must be dismissed because an individual defendant may not be held liable as an "employer" under Title VII. Finally, Defendants assert that Plaintiff's Section 1983 claims against Commissioner Gleason and Mayor Davis must be dismissed because those Defendants are entitled to qualified immunity.

A motion for summary judgment may be granted only if the pleadings, affidavits, and certain other supporting papers show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). When considering a

motion for summary judgment, all reasonable inferences are drawn in favor of the party opposing the motion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The same analysis applies to all the claims.

*Title VII Claim Against Mayor Davis*

■ Under the law of this Circuit "individual defendants with supervisory control over a [corporate] plaintiff may not be held personally liable under Title VII." *See Tomka v. Seiler Corp.,* 66 F.3d 1295, 1314 (2d Cir.1995); *Miner v. Town of Cheshire,* 126 F.Supp.2d 184 (D.Conn.2000)(Tomka "is the most current Second Circuit decision on individual liability under Title VII and is therefore precedent for this Court to follow"). In *Tomka,* the Court noted that Title VII specifically limited liability to employer-entities with 15 or more employees. In light of Congress' concern to avoid subjecting small employers to the burdens of Title VII, Our Court of Appeals reasoned that Congress could not have intended to allow civil liability to run against individuals. Plaintiff's Title VII claims against Mayor Davis are dismissed.

*Qualified Immunity for the § 1983 Claims against the Individual Defendants*

■ Qualified immunity is a defense available to public officials if they are performing a discretionary function and their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Warren v. Keane,* 196 F.3d 330, 332 (2d Cir.1999). Defendants are entitled to qualified immunity if their action either 1) did not violate clearly established law, or 2) was objectively reasonable. The doctrine of qualified immunity is unavailable on the facts of this case. The right to be free from discrimination in employment on account of race is well established, both by Title VII, and, with respect to state actors, under 42 U.S.C. § 1983, as is the right to be free from retaliation for speech or un-

ion activity, or asserting claims of discrimination. If discrimination or retaliation played a substantial part in the employment decisions, Defendants' conduct could not be characterized as objectively reasonable. Accordingly, this case may not be resolved on the basis of qualified immunity, and that portion of the motion is denied.

*Plaintiff's Section 1983 and Title VII Claims Relating to the First Promotion in August 1999*

Mr. DiLegge claims that he was not selected for promotion in August 1999 because of his union association and race in violation of his rights under the First and Fourteenth Amendments to the Constitution, and Title VII, 42 U.S.C.2000(e).

■ To establish a Title VII discrimination claim for failure to promote based on race, a Plaintiff must demonstrate that 1) he is a member of a protected class, 2) he was qualified for the position, 3) he suffered adverse employment action, and 4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Austin v. Ford Models, Inc.,* 149 F.3d 148, 152 (2d Cir. 1998). To establish a First Amendment retaliation claim, a Plaintiff must demonstrate that: 1) his [action] was constitutionally protected, 2) he suffered an adverse employment decision, and 3) a causal connection exists between his [action] and the adverse employment determination against him, so that it can be said that his [action] was a motivating factor in the determination. *Morris v. Lindau,* 196 F.3d 102, 110 (2d Cir.1999). The right to petition government and the right to free speech are subject to the same constitutional analysis. *Wayte v. United States,* 470 U.S. 598, 610 n. 11, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985).

■ Defendants argue that courts in this District and in other Circuits have held that a heightened burden applies, as here, when reverse race discrimination is

alleged. *See, e.g., Olenick v. New York Telephone/A NYNEX Co.,* 881 F.Supp. 113, 114 (S.D.N.Y.1995)(Knapp, J.). Under this heightened burden analysis, the Plaintiff must also demonstrate that the Defendant is that "unusual employer who discriminates against the majority." This Court does not agree that there is a heightened burden analysis available to courts confronted with summary judgment motions in reverse race discrimination cases. There is an ordinary standard of proof in civil litigation generally, with a few well-established exceptions such as fraud, which must be proved by clear and convincing evidence. Everything else is regulated by a preponderance of the credible evidence standard, and absent direction from our Court of Appeals or the Supreme Court to the contrary this Court is not inclined to imply such a distinction in reverse discrimination cases. Common sense suggests that there is no reason to believe that reverse discrimination does not exist, nor is there anything in human nature which prevents members of the majority from practicing it. *See McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 279, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976). As our colleague, the Hon. Constance Baker Motley, has pointed out:

> In the Second Circuit, district courts disagree as to whether *Olenick* is appropriate or consistent with *McDonald. Compare, e.g. Umansky v. Masterpiece Int'l Ltd.,* 1998 WL 433779, No. 93 Civil 2367(AGS)(S.D.N.Y. July 31, 1998)(applying *Olenick)* with *Cunliffe v. Sikorsky Aircraft Corp.,* 9 F.Supp.2d 125 (D.Conn.1998)(rejecting *Olenick* ). Outside the circuit, there is similar disagreement. *Compare, e.g. Parker,* 652 F.2d 1012 (D.C.Cir.1981)(higher prima facie burden for reverse discrimination plaintiffs) *with Lucas v. Dole,* 835 F.2d 532 (4th Cir.1987)(no higher prima facie burden). But perhaps more important than the discussions in these few cases is the glaring silence of the Second Circuit. Absent binding authority to the contrary, this court must assume that

*McDonald* means what it says: a Title VII case is a Title VII case on the "same terms" for plaintiffs of all races.

*Cully v. Milliman & Robertson, Inc.,* 20 F.Supp.2d 636, 642 (S.D.N.Y.1998). *See also Berkowitz v. County of Orange,* 120 F.Supp.2d 386 (S.D.N.Y.2000, Conner, J.) The Court rejects as unfounded the concept articulated in *Olenick v. New York Telephone/A NYNEX Co.,* 881 F.Supp. 113, 114 (S.D.N.Y.1995) and a considerable number of unreported cases which follow the logic of *Olenick.* cf. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), declining to approve a heightened pleading standard in civil rights cases against a municipality.

The 1990 population of Mt. Vernon, a small city of 4.2 square miles with a population of 67,153, adjoining Bronx County, was 55.6% Black. It is doubtful if the soon to be published 2000 Census will reflect a material change in these statistics. Mayor Davis is an African–American, although Commissioner Gleason is caucasian. It would certainly be understandable if the City government wished to gain greater diversity in employment, particularly with respect to fire and police, who must interrelate with the population of the City under difficult and often emotional circumstances. Where two applicants are considered to be of substantially similar qualifications, no adverse inference follows against the City simply because the Mayor, whose caucasian subordinate had the power of appointment, happens to be a minority.

Whether or not the analysis of *Olenick* is followed, a caucasian plaintiff may not holler discrimination and survive a summary judgment motion simply because the political leadership of the city resides with a minority. To survive the motion, Plaintiff must show that a reasonable juror could find on the evidence presented in opposition to the motion, that reverse race

discrimination played a substantial part in the promotional decision by the decision maker.

Appointments and promotions within the Fire Department are governed, *inter alia*, by Section 61 of the Civil Service Law of the State of New York, which states:

"Appointment or promotion from an eligible list to a position in the competitive class shall be made by the selection of one of the three persons certified by the appropriate civil service commission as standing highest on such eligible list who are willing to accept such appointment or promotion; provided, however, that, the state or a municipal commission may provide, by rule, that where it is necessary to break ties among eligibles having the same final examination ratings in order to determine their respective standings on the eligible list, appointment or promotion may be made by the selection of any eligible whose final examination rating is equal to or higher than the final examination rating of the third highest standing eligible willing to accept such appointment of promotion. Appointments and promotions shall be made from the eligible list most nearly appropriate for the position to be filled."

Civil Service Law § 61(1). McKinney's 1999.

This represents the embodiment of the traditional "one out of three rule," which has its antecedents in the nineteenth century, when the concept of a civil service appointed by competitive examination first took hold in New York. The adherents of appointment by competitive examination recognized that no examination was reliable enough to constitute the sole basis for a personnel decision. The "one out of three rule" allows the appointing officer discretion to appoint anybody in the top three names on the list, thereby permit-ting the appointing official to give limited weight to the intangibles such as leadership ability, specialized experience, the ability to relate to members of the public to be served, nearness of the applicant's residence to the job site, and perhaps a small residue of old fashioned politics. The statute represents a compromise, and a perceived reform from the ancient times when vacancies were filled based upon political favoritism, often without regard to qualifications, and occasionally, under the aegis of Tammany Hall, by under-the-table payments of cash.[1]

In filling two slots at once, the appointing authority was entitled to appoint two out of the four top names, and did so. Viewed objectively, the candidates appointed are relatively similar in their formal qualifications. Mr. Koch received a raw score of 80 on the promotional examination, and with additional credit for which he was eligible, he had a total score of 87.5. Plaintiff scored 83 on the promotional examination, the highest score of any of the eligible candidates, and with credit for seniority, his total score was 86.0, less than Mr. Koch, but more than Mr. Stevenson, who received a raw score of 81 on the promotional examination and had a total score of 83. Mr. Stevenson is only three years Plaintiff's junior in departmental seniority. Mr. Jenks, who was promoted to Fire Lieutenant instead of Plaintiff in July 2000 received a score of 81 on the promotional examination and had a total score of 83.

Insofar as concerns the subjective qualifications of the candidates, reasonable persons may evaluate the candidates differently. As was to expected, Plaintiff claims that Mr. Koch had served on fire prevention desk duty for some time prior to his promotion and his fire fighting skills were

---

1. . A number of local government positions remain in the Exempt, Unclassified, and Non–Competitive service under the New York Civil Service Law representing, respectively, policy positions, unskilled workers and skilled work-ers who are not appointed from a list generated by the Civil Service commission, but are required to demonstrate their qualifications by experience or training.

rusty, and alleges that Stevenson and Jenks were less well qualified.

Plaintiff also alleges that Commissioner Gleason was angry about Mr. DiLegge's comments at a public meeting in the summer of 1999 regarding the City of Mount Vernon Fire Department's inadequate support of Westchester mutual aid. Mr. Gleason expressed an intention to consider instituting disciplinary charges against him, although he never did so. Mr. DiLegge also had voiced concern about the operation of the Fire Commissioner's office during his previous ten years as a member and an officer of Local 107, the relevant collective bargaining unit for the fire fighters.

Defendants challenge Mr. DiLegge's First Amendment retaliation claim on the ground that Mr. DiLegge cannot establish that the decisions not to promote him in August 1999 and July 2000 were motivated by his exercise of his First Amendment rights. Defendants challenge Mr. DiLegge's Fourteenth Amendment and Title VII claims on the ground that Mr. DiLegge cannot establish that the failure to promote him to Fire Lieutenant occurred in circumstances giving rise to an inference of race discrimination, as required to establish a claim under those laws. In addition, Mayor Davis claims that he had no role in the selection of Fire Lieutenants.

■ All pretrial discovery having been concluded in this case, to survive the motion, Plaintiff must come forward with evidence to support his claims of reverse racial discrimination and retaliation, which would be sufficient if believed, to permit a rational juror to decide the case in Plaintiff's favor. This Court concludes as a matter of law that the evidence proffered on the motion is not sufficient to support a trial verdict in favor of Plaintiff.

Essentially, Plaintiff's charges begin and end with Gleason, who had the decision making power in the case. Both sides of the case agree that Commissioner Gleason is unable to testify and will remain so. We note in passing that if this case were brought in the state courts against Gleason individually, the provisions of § 4519 of the New York C.P.L.R. would prevent Plaintiff from entering testimony as to any extrajudicial admissions made by Gleason. This is the so-called "Dead Man's Statute," beloved by trial attorneys and uniformly criticized by the academics, which yet remains in force in New York and other jurisdictions, and applies in this Court where state law provides the rule of decision. *See* 601 F.R.Evid. While the Dead Man's Statute is not applicable to this case, we should recognize the unfair practical effect on a trial if counsel can argue that Gleason discriminated and Gleason is unable to testify that he did not. Plaintiff's case hangs on the fact that because he is caucasian and Mayor Davis is African–American, the City of Mt. Vernon must have discriminated against him and that it did so because Mayor Davis in some way imposed some clandestine influence upon the decision maker. Deputy Commissioner LaManna has testified on deposition that Gleason needed prior approval from the Mayor before promoting anyone, and Fire Chief Bruno told Plaintiff he should speak to the Mayor about having been passed over for promotion in 1999. This evidence is equivocal, and is not enough under the circumstances for a juror to infer that Gleason discriminated against the Plaintiff in this particular case for the reasons claimed and at the instance of the Mayor.

Plaintiff's own deposition testimony shows the thin nature of the evidence.

Plaintiff testified in deposition as follows:

Q. Who, if anyone, told you that Mayor Davis requested that Stevenson be promoted?

A. Nobody.

Q. Do you have a factual basis for asserting that Mayor Davis requested that Gleason promote Stevenson?

A. Factual basis, no, sir.

He also testified as follows:

Q. Other than Mayor Davis knowing Edward Stevenson's father, do you believe there were other reasons you were passed over for promotion in August of 1999?

A. With regards to Stevenson, no, I think that's enough.

\* \* \* \* \* \*

Q. What is your basis for alleging that Commissioner Gleason and Mayor Davis agreed to promote Koch and Stevenson, because of Koch and Stevenson's respective races?

A. I really don't believe they promoted Koch because he is a white man. I believe they really promoted him because him and Gleason [sic] were buddies and I do believe that Stevenson was promoted because of the color of his skin, which happens to be shared with the same color as Mayor Davis.

At trial Mayor Davis will deny Plaintiff's allegations and Commissioner Gleason cannot testify. Plaintiff is bound by his deposition testimony. This is simply not enough to get to the jury and is reminiscent of the practice forbidden by Judge Learned Hand in *Dyer v. MacDougall,* 201 F.2d 265, 269 (2d Cir.1952).

[Although] in strict theory a party having the affirmative might succeed in convincing a jury of the truth of his allegations in spite of the fact that all the witnesses denied them, we think it plain that a verdict would nevertheless have to be directed against him.

As our Court of Appeals recognized in *Fisher v. Vassar College,* 114 F.3d 1332, 1337 (2d Cir.1997), whenever one aspirant for promotion is chosen over another, differences will exist between the aspirants as to race, religion, sex and national origin. The mere existence of such differences will not support a verdict for plaintiff. A plaintiff must prove that discrimination was the real reason for his failure to obtain promotion, and "a jury cannot infer discrimination from thin air." *Norton v. Sam's Club,* 145 F.3d 114, 119 (2d Cir. 1998). The same is true of retaliation.

Insofar as concerns the claim that Plaintiff suffered an adverse employment action when he was not promoted in March 2000, this claim must be dismissed because Defendants have come forward with a legitimate, non-discriminatory reason for their decision to promote Mr. Jenks as a fire lieutenant on that occasion, namely that "fire fighter Jenks is respectful of authority, and, due to his military service, has demonstrated that he is capable, experienced to be a leader and has an excellent attitude." Plaintiff at his deposition admitted that he was not better qualified to be a lieutenant than Jenks, although he claims to be equally qualified. Here again, the subjective factors permitted in exercising judgment to appoint one out of three from a civil service list of qualified applicants may properly be considered by Defendants without engaging in violation of federal law, when an equally qualified applicant is appointed.

Whether the claims based on the facts alleged are viewed under Title VII or § 1983, or as a Constitutional violation, there must be evidence of a purposeful intent to discriminate and such evidence is lacking in this case. Specifically, Plaintiff cannot prove that his activities as a union leader or the commencement of this lawsuit were a significant motivating cause for Plaintiff's failure to be promoted instead of Mr. Jenks. When asked in his deposition to support the causal connection, Plaintiff conceded that he had no factual basis for believing that his union activities played any part in his failure to be promoted. He was "definitely a critic of Gleason's administration." In this, probably he was not alone. He disclaimed in his deposition any proof of awareness on the part of Mayor Davis of his union activities, or that Gleason was "upset that [he was] a union trustee." At most, he stated

that such discrimination was a possibility. A mere possibility is not sufficient to support a jury verdict in Plaintiff's favor.

All other contentions submitted in opposition to the motion have been considered and are unpersuasive.

For the foregoing reasons, Defendants' motion is granted and the action is dismissed.

The Clerk shall file a final judgment.

SO ORDERED.