In re VALERINO CONSTRUCTION, INC., Debtors.

Warren H. Heilbronner, Trustee, Plaintiffs,

v.

Carole Nicosia, Defendants.

Warren H. Heilbronner, Trustee, Plaintiffs,

v.

J.I. Case Credit Corporation, Defendants.

Bankruptcy No. 97–20881.
Adversary Nos. 99–2153, 99–2155.

United States Bankruptcy Court, W.D. New York.

June 23, 2000.

Warren H. Heilbronner, Rochester, NY, for plaintiff/trustee.

Richard P. Vullo, Rochester, NY, for Nicosia.

Joseph Allen, Jaeckle, Fleischmann & Mugel, Buffalo, NY, for Case Credit.

## DECISION & ORDER

JOHN C. NINFO, II, Chief Judge.

### BACKGROUND

On March 13, 1997, five creditors filed an involuntary Chapter 7 petition initiating a case against Valerino Construction, Inc. (the "Debtor"). On April 2, 1997, upon the written consent of the Debtor, an Order for Relief was entered. Thereafter, Warren H. Heilbronner was appointed as the Chapter 7 Trustee (the "Trustee").

On March 26, 1999, the Trustee commenced an Adversary Proceeding (the "Nicosia Adversary Proceeding") against Carole Nicosia ("Nicosia"), the mother of Robert A. Valerino ("Valerino"), the sole shareholder and president of the Debtor.

The Complaint in the Nicosia Adversary Proceeding alleged that on or about January 16, 1997 the Debtor transferred $30,000.00 to Nicosia in payment of an antecedent debt, and that the Trustee could avoid the transfer as preferential pursuant to Section 547(b).[1]

---

1. Section 547(b) provides that:
 (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

 (1) to or for the benefit of a creditor;
 (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
 (3) made while the debtor was insolvent;

On May 18, 1999, Nicosia interposed an Answer to the Complaint which did not dispute the existence of the five elements necessary to establish a preferential transfer, as set forth in Section 547(b), but asserted that the $30,000.00 transferred to Nicosia was not property in which the Debtor had an interest. Nicosia alleged that the monies transferred to her were trust funds as defined under Article 3–A of the New York Lien Law (the "Lien Law"), and, therefore, would not have been property of the Debtor's estate if they had not been transferred pre-petition.

On April 18, 2000, Nicosia filed a Motion for Summary Judgment which asserted that the Trustee's Complaint in the Nicosia Adversary Proceeding should be dismissed, as a matter of law, because the property transferred to her was not property in which the Debtor had an interest for purposes of Section 547(b).

On March 26, 1999, the Trustee commenced an Adversary Proceeding (the "Case Credit Adversary Proceeding") against J.I. Case Credit Corporation ("Case Credit"). The Trustee's Amended Complaint in the Case Credit Adversary Proceeding alleged that: (1) on or about January 16, 1997 the Debtor transferred the sums of $21,589.52 and $19,997.18 to Case Credit in payment of the amounts due from Valco, Inc. of Rochester, a corporation also owned by Robert A. Valerino, in connection with Case Credit's financing of two Case 580 Backhoes; (2) if Case Credit was a creditor of the Debtor, those transfers were avoidable as preferential transfers pursuant to Section 547(b); and (3) if Case Credit was not a creditor of the Debtor, those transfers were avoidable as fraudulent conveyances pursuant to Section 548(a)(2)(B)(1).[2]

Thereafter, Case Credit interposed an Answer to the Amended Complaint and filed a Motion for Summary Judgment (the "Case Credit Motion for Summary Judgment") which asserted that the transfers to it were not avoidable by the Trustee because the monies it received were trust funds under Article 3–A of the Lien Law, and, therefore, were not property in which the Debtor had an interest for purposes of either Section 547 or Section 548.

It has been agreed by the Trustee, Nicosia and Case Credit, that: (1) the monies paid to Nicosia and Case Credit by the Debtor had been paid to it in connection with the improvement of various parcels of real property on which it was a contractor so that they were trust funds under Article 3–A of the Lien Law; and (2) neither Nicosia nor Case Credit was a subcontractor on those particular improvement projects nor did they otherwise provide any work, labor or services in connection with the projects.

## DISCUSSION

### I Case Law

We know from the decision of the United States Supreme Court in *Begier v. Internal Revenue Service*, 496 U.S. 53, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990)

---

(4) made—
(A) on or within 90 days before the date of the filing of the petition; or
(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
(5) that enables such creditor to receive more than such creditor would receive if—
(A) the case were a case under chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b) (1998).

**2.** Section 548(a)(2)(B)(i) provides that:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
(2)(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation[.]
11 U.S.C. § 548(a)(2)(B)(i) (1998).

("*Begier*") that: (1) for a trustee to avoid a transfer of an interest of the debtor in property under Section 547(b), the property transferred must be property that would have been part of the bankruptcy estate had it not been transferred pre-petition; and (2) since a debtor that holds property in trust for another does not possess an equitable interest in the property, the property is not property of the estate under Section 541 and is not property in which the debtor has an interest for purposes of Section 547(b).

■ We also know from the decision of the United States Bankruptcy Court for the Western District of New York in *In re Building Dynamics, Inc.,* 134 B.R. 715 (Bankr.W.D.N.Y.1992) ("*Building Dynamics*"), and the cases cited therein, that: (1) the Lien Law creates a statutory trust which requires the funds received by a general contractor for the improvement of real property to be held in trust for the benefit of the subcontractors, architects, engineers, surveyors, laborers and materialmen who contributed to the improvement; and (2) when such trust funds are paid to a subcontractor who is a beneficiary of the statutory trust under the Lien Law, the payment is not of property of the debtor as required by Section 547(b) and the decision of the United States Supreme Court in *Begier.*

■ We further know that New York State Courts which have interpreted the Lien Law have held that a bankruptcy trustee may not stand in the position of the bankrupt as a contractor or subcontractor trustee under Article 3–A of the

Lien Law and proceed directly against a transferee of diverted trust funds. *See Beckerman v. Tummolo,* 63 A.D.2d 818, 406 N.Y.S.2d 398 (N.Y.App.Div.1978).

■ In *Building Dynamics* and numerous other cases where the courts have held that trust funds received in connection with the improvement of real property were not property in which the debtor has an interest for purposes of Section 547(b),[3] trustees were seeking to recover funds from one of the trust fund beneficiaries who had contributed to the particular improvement. Courts deciding the issue frequently pointed out that if a trustee were successful in avoiding the transfers, because of the preservation and distribution scheme set forth in the Bankruptcy Code,[4] the avoidance and subsequent redistribution would have benefitted not only other unpaid trust fund beneficiaries, but also non-trust fund beneficiary creditors. This itself would result in a further impermissible diversion of the trust funds.

In the pending adversary proceedings, neither defendant is a trust fund beneficiary of the Article 3–A trust funds paid to them, and the Trustee has suggested and agreed that if the Court determines that he can avoid the transfers to Nicosia and Case Credit, he will distribute the funds recovered only to any unpaid trust fund beneficiaries of the particular improvements in question.[5]

## II *The Lien Law*

The New York State Legislature, like the legislatures of many states, has addressed the rights and remedies of trust

---

3. Although *Begier* and *Building Dynamics* involved trustees attempting to avoid preferential rather than intentionally or constructively fraudulent transfers, the requirement that to be avoidable the transfer must involve an interest of the debtor in property is identical in Section 548, and Courts have recognized this in circumstances which involved trust funds other than Article 3–A Lien Law trust funds. *See Jenkins v. Chase Home Mortgage Co. (In re Maple Mortgage, Inc.),* 81 F.3d 592 (5th Cir.1996).

4. *See* Section 551 and Section 726.

5. The Trustee's offer is understandable in view of the decision of the United States District Court for the Eastern District of New York in *Albert Pick Co., Inc. v. Travis,* 6 F.Supp 486 (E.D.N.Y.1933) which held that trust funds recovered by a trustee or otherwise coming into the trustee's possession can only be distributed to the trust fund beneficiaries of the improvements in question.

fund beneficiaries who have contributed to the improvement of real property in a comprehensive manner to insure that they receive their contracted for compensation in connection with such improvements. As a result, these real property improvement trust fund beneficiary creditors, when compared to most other commercial creditors, are an extraordinarily favored class of creditors.

■ Any owner, contractor or subcontractor, or responsible individual who breaches the trust by diverting trust funds to a non-trust fund beneficiary: (1) can be charged with and be found guilty of the crime of larceny; (2) is subject to personal civil liability[6]; and (3) may have the indebtedness resulting from such a diversion determined to be nondischargeable under Section 523(a)(4) in the event of a bankruptcy.[7] In addition, a trust fund beneficiary can file a mechanics lien against the improvement in order to increase its chances of payment, and it can maintain an action, on behalf of all proper unpaid trust fund beneficiaries, to enforce the trust against a non-trust fund beneficiary transferee when there has been a diversion.[8]

■ Although the statute of limitations that applies to a diversion of trust funds action is relatively short, the later of one year from the completion of the pro-ject or the last date on which the trust fund beneficiary was to be paid in full, there is New York State and Federal case law which holds that if a contractor, or subcontractor has abandoned the project, such as the Debtor arguably did in this case, completion has not occurred for purposes of the one year statute of limitations, and a longer six-year contractual statute of limitations applies.[9] In addition, the Lien Law and case law is clear that until all trust fund beneficiaries are paid in full, the trust continues even in diverted funds and it remains intact regardless of the applicable statute of limitations.[10]

Furthermore, because trust fund beneficiaries are generally aware of the comprehensive rights and remedies provided for them under Article 3–A of the Lien Law, and have the ability to file mechanics liens against the improvement, these creditors for the most part are very knowledgeable about the status of the improvement and the flow of funds between the owners, contractors and subcontractors, and are usually in an excellent position to take advantage of their various rights and remedies.

### III *General*

■ I agree with Nicosia and Case Credit that: (1) the monies transferred to

---

6. *See* Lien Law Section 77 Action to Enforce Trust; and Lien Law Section 79–A Misappropriation of Funds of Trust (Constitutes Larceny).

7. *See In re Kawczynski,* 442 F.Supp. 413 (W.D.N.Y.1977); *In re Phipps,* 217 B.R. 427 (Bankr.W.D.N.Y.1998); and *In re Oot,* 112 B.R. 497 (Bankr.N.D.N.Y.1989).

8. Lien Law Section 77.1 provides:

1. A trust arising under this article may be enforced by the holder of any trust claim, including any person surrogated to the right of a beneficiary of the trust holding a trust claim, in a representative action brought for the benefit of all beneficiaries of the trust. An action to enforce the trust may also be maintained by the trustee. In any such action, except as otherwise provided in this article, the practice, pleadings, forms and procedure shall conform as near-ly as may be to the practice, pleadings, forms and procedure in a class action.
Lien Law Section 77.3(a)(i) provides:
(a) The relief granted in any such action may include any or all of the following:
(i) Relief to compel an interim or final accounting by the trustee; to identify and recover trust assets in the hands of any person; to set aside as a diversion any unauthorized payment, assignment or other transfer, whether voluntary or involuntary; to enjoin a diversion; to recover damages for breach of trust or participation therein[.]

9. *See Putnins Contracting Corp. v. Winston Woods at Dix Hills, Inc.,* 72 Misc.2d 987, 340 N.Y.S.2d 317 (N.Y.Sup.Ct.1973); and *In re Grosso,* 9 B.R. 815 (Bankr.N.D.N.Y.1981).

10. *See* Lien Law Section 70(3) and *In re Tripp,* 189 B.R. 29 (Bankr.N.D.N.Y.1995).

them by the Debtor were trust funds under Article 3–A of the Lien Law and not property in which the Debtor had an interest for purposes of either Section 547 or Section 548; and (2) it makes no difference that they were not proper trust fund beneficiaries, the funds were trust funds when transferred to them and, as provided for in Section 70(3) of the Lien Law, the funds continue to be trust funds.

Although it may seem unjust and inequitable for a Bankruptcy Court to allow a non-trust fund beneficiary to retain diverted Article 3–A trust funds and not allow the trustee to employ every possible avoidance power provided for by the Bankruptcy Code, including the ability to avoid preferential transfers, to recover the diverted trust funds, at least for the benefit of proper trust fund beneficiary creditors, the case law and language of Sections 547 and 548 are clear, and this Court does not believe that a trustee can use the avoiding powers under the Bankruptcy Code for this purpose.

As for equitable considerations, this favored class, trust fund beneficiary creditors, does not need either the avoiding powers provided for in the Bankruptcy Code or the bankruptcy system in order to fully protect it. As discussed above, there are adequate state law rights and remedies if these creditors are diligent and fully exercise those rights and remedies. Although diversions like those to Nicosia and Case Credit are not expected, they are certainly provided for in Article 3–A, and as a practical matter are common.

## IV *Existing Rights and Remedies*

 If the trust funds transferred to Nicosia and Case Credit are not and

were not property of the bankruptcy estate, it appears that proper trust fund beneficiaries may even now be able to pursue Nicosia and Case Credit directly to enforce the trust pursuant to Lien Law Section 77.[11] If this is precluded by any applicable state law statute of limitations, that is the fault of the trust fund beneficiaries for not exercising their rights in a timely manner.

What is important to note, is that neither this Court nor the bankruptcy system has in any way delayed or interfered with the ability of proper trust fund beneficiaries to exercise their rights to pursue the trust funds diverted to Nicosia and Case Credit, and they will not in any future similar case.[12]

In addition to their rights under Section 77 of the Lien Law, since under this Decision & Order a bankruptcy trustee has no ability to avoid the fraudulent transfer of Article 3–A trust funds, proper trust fund beneficiaries may continue to have state law causes of action to avoid those fraudulent conveyances under Article 10 of the New York Debtor and Creditor Law. Furthermore, the existence of the Debtor's bankruptcy case does not prohibit the commencement of those actions within any applicable New York statute of limitations, since any such actions would not compete with the powers, rights or duties of any bankruptcy trustee or with the interests of the bankruptcy estate and the general creditors of the estate.[13]

The rights and remedies of trust fund beneficiaries under Article 3–A of the Lien Law to pursue diverted trust funds in the

---

11. Based upon this Decision & Order, proper Article 3–A unpaid trust fund beneficiaries would not be required to request relief from the automatic stay to proceed against transferees of diverted Article 3–A trust funds, even if they must add the debtor as a named defendant. However, any excess trust funds received after the payment of all proper trust fund beneficiaries must be turned over to the trustee.

12. A bankruptcy proceeding may in some cases actually assist trust fund beneficiary creditors by affording them the ability to: (1) obtain important information from a debtor's schedules and other pleadings in the case; and (2) conduct relevant Section 2004 examinations.

13. Since in this case the Debtor is a corporation, its debts are not discharged.

hands of a non-bankrupt non-trust fund beneficiary are not affected by a bankruptcy of the diverter. However, those trust fund beneficiaries must be diligent.

### CONCLUSION

The Motions for Summary Judgment brought by Nicosia and Case Credit are in all respects granted. The Trustee's Adversary Proceedings against Nicosia and Case Credit are dismissed on the merits with prejudice and without costs to either party.

**IT IS SO ORDERED.**