In re McCANN, INC., Debtor.

Lee E. Buchwald, Chapter 11 Trustee of McCann, Inc., Plaintiff,

v.

Di Lido Beach Resort, Ltd., et al., Defendants.

Bankruptcy No. 04–12596 (SMB).
Adversary No. 04–4200.

United States Bankruptcy Court, S.D. New York.

Dec. 28, 2004.

Todtman, Nachamie, Spizz & Johns, P.C., Scott S. Markowitz, Esq., Jill L. Makower, Esq., of Counsel, New York, NY, for Plaintiff.

Greenberg Traurig, LLP, Howard J. Berman, Esq., of Counsel, New York, NY, for Defendant Di Lido Beach Resort, Ltd.

Klestadt & Winters, LLP, Tracy L. Klestadt, Esq., of Counsel, New York, NY, Kozyak Tropin & Throckmorton, P.A., John E. Kozyak, Esq., Laurel M. Isicoff, Esq., of Counsel, Co–Counsel for Defendants Marriott International Capital Corporation, The Ritz–Carlton Hotel Company, LLC and Luxury Finance, LLC.

## MEMORANDUM DECISION GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

STUART M. BERNSTEIN, Chief Judge.

The chapter 11 trustee of McCann, Inc. brought this adversary proceeding primarily to recover a series of transfers aggregating slightly more that $1.9 million. He relied on two theories: (1) the debtor transferred its own property that he can recover for the benefit of the estate, and (2) the debtor transferred statutory trust funds that he can recover under New York

law for the benefit of the trust beneficiaries.

Several defendants moved to dismiss. They argued, in the main, that the trustee could not recover trust funds under any theory. Moreover, the trust fund allegations were binding judicial admissions that barred relief under separate claims that did not rely on or incorporate the trust fund allegations.

For the reasons that follow, the Third Claim for Relief is dismissed, the Ninth, Tenth and Eleventh Claims are dismissed with leave to replead, and the motions to dismiss are otherwise denied.

## BACKGROUND

The background information is based upon the allegations of the First Amended Complaint,[1] dated Sept. 22, 2004, which are deemed to be true for the purpose of these motions.[2] Pertinent information was also culled from the Settlement Agreement ("Settlement Agreement") attached to the *Affidavit of Howard J. Berman in Support of the Motion of Di Lido Beach Resort, Ltd. to Dismiss the Complaint,* sworn to Oct. 25, 2004, as Ex. 2.[3]

At all relevant times, the debtor acted as a general contractor or construction manager on construction jobs, (¶ 43), apparently in New York. The debtor's affiliate, the defendant, McCann of South Florida, Inc. ("McCann/Florida"), was engaged in the construction business in Florida.[4]

On September 9, 1999, McCann/Florida, as general contractor, entered into a construction contract with the defendant, Di Lido Beach Resort, Ltd. ("Di Lido"), to construct a Ritz–Carlton hotel (the "Project") in Miami Beach, Florida. (¶¶ 3, 12, 15; Settlement Agreement, at p. 2.) The defendant, Sun Trust Bank ("Sun Trust"), acted as the first mortgage lender on the Project. (Settlement Agreement, p. 2.) The Defendant, Marriott International Capital Corporation ("Marriott"), originally acted as the second mortgage lender. It subsequently assigned its interests to the defendant, Ritz–Carlton Hotel Company, LLC ("Ritz"), which, in turn, assigned

1. References to the relevant parts of the First Amended Complaint are noted parenthetically and preceded by a paragraph sign.

2. A court may dismiss a complaint under FED. R.CIV.P. 12(b)(6), made applicable to this adversary proceeding by FED. R. BANKR P. 7012, only if it appears beyond doubt that the plaintiff would not be entitled to any type of relief, even if he proved the factual allegations in his complaint. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Harsco Corp. v. Segui,* 91 F.3d 337, 341 (2d Cir. 1996). The court must assume the truth of factual allegations in the complaint, *Harsco Corp. v. Segui,* 91 F.3d at 341, and draw all reasonable inferences in the plaintiff's favor. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

3. In deciding a motion to dismiss under FED. R.CIV.P. 12(b)(6), a court may also consider documents that are neither attached to nor incorporated by reference in the complaint

"where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir.1995)). The First Amended Complaint referred to the Settlement Agreement, (¶¶ 17–19), and the transfers that the plaintiff is seeking to recover were made in accordance with the Settlement Agreement. Furthermore, although not the subject of the pending motions, the plaintiff alleged that Fahey and McMahon breached their fiduciary duties by allowing the debtor to enter into the Settlement Agreement. (¶¶ 66, 78.) Thus, the Settlement Agreement is integral to the First Amended Complaint.

4. The defendant Bruce Fahey owns 90% of the debtor's shares and 100% of McCann/Florida's shares. (¶ 8.) The defendant Brian McMahon owns the remaining 10% of the debtor's shares. (¶ 9.)

its interests to the defendant, Luxury Finance LLC. ("Luxury"). (*Id.*) The debtor, among others, executed a guaranty of completion (the "Guaranty") in favor of Sun Trust, (¶ 13), and a guaranty of the surety bond obtained by McCann/Florida. (¶ 14.)

After disputes arose, the parties entered into the Settlement Agreement in March 2003 pursuant to which the debtor, McCann/Florida and Fahey agreed to pay Di Lido $5.5 million. (¶¶ 16–18.) The debtor subsequently wire transferred $1,827,080.02 on April 16, 2003 into an account at Sun Trust for the benefit of Di Lido (the "Initial Payment"). (¶ 20.) The debtor also made nine payments aggregating $77,083.02 to Di Lido between May 14, 2003 and January 21, 2004 (the "Periodic Payments"). (¶ 21.) The Initial Payments and Periodic Payments are referred to, collectively, as the "Payments."

An involuntary petition was filed against the debtor on April 15, 2004, an order for relief under chapter 11 was entered on June 25, 2004, and the plaintiff, Lee E. Buchwald, was appointed the chapter 11 trustee on July 26, 2004. (¶¶ 1–2.) His First Amended Complaint contained eleven claims for relief summarized in the following table:

| Count | Defendant | Nature of Claim |
|---|---|---|
| 1 | Di Lido | Avoidance and recovery of the Payments as constructive fraudulent transfers under 11 U.S.C. § 548 |
| 2 | Di Lido | Avoidance of Guaranty as constructive fraudulent conveyance under the New York Debtor & Creditor Law ("NYDCL") |
| 3 | Di Lido | Avoidance and/or recovery of the Payments as funds impressed with a statutory trust under Article 3–A of the New York Lien Law |
| 4 | Sun Trust | Avoidance and recovery of the Payments as constructive fraudulent transfers |
| 5 | Di Lido | Avoidance and recovery of Periodic Payments as preferences under 11 U.S.C. § 547 |
| 6 | Fahey | Damages for breach of fiduciary duty in the amount of the Payments |
| 7 | Fahey | Avoidance and recovery of the Payments as constructive fraudulent transfers made for the benefit of Fahey |
| 8 | McMahon | Damages for breach of fiduciary duty in the amount of the Payments |
| 9 | Marriott | Avoidance and recovery of the Payments as constructive fraudulent transfers |
| 10 | Ritz | Avoidance and recovery of the Payments as constructive fraudulent transfers |
| 11 | Luxury | Avoidance and recovery of the Payments as constructive fraudulent transfers |

Di Lido, Marriott, Ritz and Luxury moved to dismiss for failure to state claims upon which relief could be granted. They argued that the plaintiff lacked standing to recover the statutory trust funds under the Third Claim. They also maintained that the factual allegations in the Third Claim (that the transfers were made with trust funds) constituted a judicial admission that essentially estopped the plaintiff from pursuing his alternative theory, and required the dismissal of the plaintiff's other avoidance claims. In addition, Marriott, Ritz and Luxury contended that the identical claims asserted against them in the Ninth, Tenth and Eleventh Claims, respectively, pleaded contradictory facts, to wit, that they were the initial transferees of the Payments and that Di Lido was the initial transferee of the Payments. Borrowing from the earlier argument, they contended that the contradictory allegations required the dismissal of the claims.

## DISCUSSION

### A. Standing to Recover Trust Funds

 Under New York law, a contractor holds in trust the funds received in connection with a contract for the improvement of real property, as well as any rights of action with respect to those

funds. N.Y. LIEN LAW § 70 (McKinney 1993). The trust funds must be used to pay certain designated expenses, including subcontractors and materialmen claims, related payroll taxes, unemployment taxes, employment benefits and insurance premiums. *Id.,* §§ 71(2), 71(4). Misuse constitutes a diversion, *id.,* § 72(1), and the trust may be enforced through a class action brought by the beneficiaries or a representative action brought by the trustee on their behalf:

> A trust arising under this article may be enforced by the holder of any trust claim … in a representative action brought for the benefit of all beneficiaries of the trust. An action to enforce the trust may also be maintained by the trustee.

*Id.,* § 77(1).

The Third Claim for Relief alleges that the debtor was a statutory trustee under the Lien Law, (¶ 43), and improperly diverted statutory trust funds to make the Payments. (¶ 44.) The plaintiff seeks to avoid and recover the trust funds on two theories. First, he invokes his status as statutory successor to creditors under 11 U.S.C. § 544(b), and maintains that he can recover the trust funds as fraudulent transfers. Second, he argues that he is also the statutory successor to the debtor,

and may sue to recover the trust funds, to the same extent that the debtor could, under § 77(1) of the Lien Law.

## 1. Recovery as a Fraudulent Transfer

Section 548 of the Bankruptcy Code authorizes a trustee to avoid prepetition fraudulent transfers of the debtor's interest in property.[5] In addition, 11 U.S.C. § 544(b) incorporates the state fraudulent transfer laws, providing that:

> [T]he trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

A trustee can only avoid and recover "property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings." *Begier v. Internal Revenue Serv.,* 496 U.S. 53, 58, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990). "[I]f the debtor transfers property that would not have been available for distribution to his creditors in a bankruptcy proceeding, the policy behind the avoidance power is not implicated." *Id.; cf. Bear, Stearns Secs. Corp. v.*

---

**5.** Section 548(a)(1) states, in pertinent part:

The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

(B)(I) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

*Gredd,* 275 B.R. 190, 195 (S.D.N.Y.2002)("[C]reditors must actually be harmed in order to avoid a fraudulent transfer under [11 U.S.C. § 548]."). Since trust funds can only be used to pay the claims of trust fund beneficiaries, a debtor does not have an interest in trust funds for avoidance purposes. *See Begier v. Internal Revenue Serv.,* 496 U.S. at 59, 110 S.Ct. 2258; *Heilbronner v. Nicosia (In re Valerino Constr., Inc.),* 250 B.R. 39, 43 (Bankr.W.D.N.Y.2000) (discussing Article 3–A funds); 1 DAVID G. EPSTEIN, *ET AL.,* BANKRUPTCY, § 6–7, at 522 (1992) ("[A] debtor's transfer of property held in trust by her is never a preference.").

■ These principles foreclose the plaintiff's argument that he can recover the trust funds as fraudulent transfers. The plaintiff acknowledged that the transferred funds were insufficient to satisfy the claims of the trust beneficiaries. The unpaid trust claims exceed $10 million, (¶ 45), and the Payments aggregated approximately $1.9 million.[6] (¶¶ 20–21.)

Hence, the debtor did not have any "equity" in the trust funds. The plaintiff concedes, in this regard, that if he avoids and recovers the trust funds, "he will distribute the funds recovered only to the unpaid trust fund beneficiaries of the particular improvement in question." (*Trustee's Memorandum of Law In Opposition to Motions to Dismiss [etc.],* dated Nov. 16, 2004, at 12 ("*Trustee's Memo*")(ECF Doc. # 14).)

■ Furthermore, the recovery of the trust funds will not benefit the estate. The beneficiaries are unsecured creditors of the estate. If the plaintiff recovers any trust funds, he will pay the beneficiaries, and the transferees will be substituted for the trust beneficiaries as unsecured creditors by virtue of 11 U.S.C. § 502(h).[7] The net effect will be no increase in assets and no decrease in unsecured debt. Accordingly, the plaintiff cannot recover the trust funds as fraudulent transfers.[8]

■ The plaintiff fairs no better under

---

6. It is possible that on a per job basis, the portion of the Payments attributable to that job might exceed the unpaid trust fund claims on that job, generating a surplus. The plaintiff has never, however, intimated that the estate has any equity in any part of the Payments.

7. Section 502(h) states:

A claim arising from the recovery of property under section 522, 550, or 553 of this title shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

If the transferees are obligees under the Settlement Agreement, they may also acquire increased claims under that contract.

8. The plaintiff only relied on § 544(b) in his memorandum, but that section suffers from the same shortcomings as § 548. In addition, the plaintiff failed to plead the existence

of an actual unsecured creditor that could have avoided the transfers under applicable non-bankruptcy law. In fact, he conceded at oral argument, that the average unsecured creditor could not avoid and recover the transfer of trust funds under the New York Debtor & Creditor Law. He argues, instead, that the trust beneficiaries were also unsecured creditors, and their statutory right under the Lien Law to recover the trust property passed to the chapter 11 trustee under § 544(b). The argument ignores that the Lien Law grants standing to the trust beneficiaries by virtue of their status as trust beneficiaries, and not because they may also be unsecured creditors. Unsecured creditors *qua* unsecured creditors have no rights under the Lien Law, and hence, none pass to the trustee through the operation of § 544(b).

Lastly, it is not even clear why the plaintiff relied on § 544(b). The Payments were made within a year of the petition date, and if fraudulently transferred, can be recovered under § 548. This eliminates the additional obstacles raised by § 544(b).

11 U.S.C. § 544(a),[9] the "strong arm" provisions of the Bankruptcy Code. This argument is made somewhat obliquely by the plaintiff, and requires some explanation. Under § 541(d) of the Bankruptcy Code,

> [P]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, ... becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

On its face, § 541(d) preserves third party equitable interests in the debtor's property.

Section 544(a), however, grants the trustee the status of a hypothetical judicial lien creditor, an unsatisfied execution creditor, and a *bona fide* purchaser for value of real estate. In some cases, applicable state law permits an actual creditor with the same rights to cut off the very equitable interests that § 541(d) appears to preserve. This accounts for what some courts have described as a "tension" between the two provisions.

The plaintiff spills a great deal of ink discussing this "tension," and suggests that his status under § 544(a) allows him to avoid the transfers of the trust funds to the defendants. Section 544(a), however, is immaterial, and the plaintiff's argument confuses §§ 544(a) and 544(b). The plaintiff did not sue the trust beneficiaries, or suggest that his status under § 544(a) gives him the right to avoid the beneficiaries' equitable interests in the trust *res*. To the contrary, he intends to use the trust funds to pay the trust beneficiaries. Nor does he contend that the transferees, who he did sue, held equitable interests in the trust funds at the commencement date that are subject to avoidance under § 544(a). In short, he is not trying to avoid any equitable interests preserved under § 541(d).

Furthermore, the plaintiff's discussion of the law overlooked controlling Second Circuit law. The plaintiff cited several authorities, reflecting the so-called "majority view," that a trustee's status as a hypothetical *bona fide* purchaser for value of real estate, 11 U.S.C. § 544(a)(3), cuts off the unrecorded rights of a constructive trust beneficiary in real estate under applicable state law, despite the language of § 541(d).[10] *E.g., In re Seaway Express*

---

9. Section 544(a) states:

 The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

 (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

 (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with

respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

 (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

10. The trust funds are personal property. Section 544(a)(3) is concerned with equitable interests in real property. In addition, the present case involves a statutory trust rather than a constructive trust.

*Corp.,* 912 F.2d 1125, 1128–29 (9th Cir. 1990); *Belisle v. Plunkett,* 877 F.2d 512, 516 (7th Cir.1989); *In re Tleel,* 876 F.2d 769, 771–72 (9th Cir.1989); *In re Paul J. Paradise & Assocs., Inc.,* 249 B.R. 360, 371–72 (D.Del.2000); *In re Patel,* 195 B.R. 779, 782 (D.Utah 1996); *Ebel v. Ebel (In re Ebel),* 144 B.R. 510, 514–15 (D.Colo.1992); *D & F Petroleum v. Cascade Oil Co. (In re Cascade Oil Co.),* 65 B.R. 35, 41–42 (Bankr.D.Kan.1986); *cf. XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.),* 16 F.3d 1443, 1451 (6th Cir.1994) ("[A] creditor's claim of entitlement to a constructive trust is not an 'equitable interest' in the debtor's estate prepetition, excluded from the estate under § 541(d)."); *In re DVI, Inc.,* 306 B.R. 496, 503 (Bankr.D.Del. 2004) (neither § 544(a)(1) nor (a)(2) permits the trustee to cut off the interests of the constructive trust beneficiary under Illinois law in personal property).[11]

The Second Circuit rejected this approach and adopted the contrary, "minority view" in *Sanyo Elec., Inc. v. Howard's Appliance Corp. (In re Howard's Appliance Corp.),* 874 F.2d 88 (2d Cir.1989). There, the Court concluded that the debtor held certain property in constructive trust for the benefit of the plaintiff at the time that the case was filed. Turning to the "tension" between §§ 541(d) and 544(a), the Court of Appeals stated:

> Finally, we need not concern ourselves with whether section 544 of the Bankruptcy Code would mandate a result contrary to the one we reach today, *see General Coffee,* 828 F.2d at 704–07, since the constructive trust imposed here attached prior to the filing of the

Chapter 11 petition. *See [In re] Quality Holstein Leasing,* 752 F.2d at 1013–14 & n. 10 (property rights that attached before the petition date supercede the debtor-in possession's lien creditor position under section 544). Indeed, the court in *General Coffee,* 828 F.2d at 706, in considering the interplay between sections 541 and 544, recognized that the rights of beneficiary of a constructive trust "prevail over a hypothetical ideal lienholder."

*Id.* at 95.

For all of the foregoing reasons, I conclude that the plaintiff cannot avoid the transfer of the trust funds under § 544(a).

## 2. Recovery Under LIEN LAW § 77(1)

 The plaintiff also maintains that he can recover the trust funds, as statutory successor to the debtor, under N.Y. LIEN LAW § 77(1). Outside of bankruptcy, § 77(1) allows the contractor-trustee to sue on behalf of the trust beneficiaries. Under § 541(a), all of the debtor's legal and equitable interests in property are vested in the estate as of the commencement of the case, and the trustee "has standing to bring any suit that the bankrupt corporation could have instituted had it not petitioned for bankruptcy." *Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d 114, 118 (2d Cir.1991); *accord Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1093 (2d Cir.1995). Section 541(b)(1), however, excludes "any power that the debtor may exercise solely for the benefit of an entity other than the debtor." The moving defendants assert that a debt-

---

**11.** The plaintiff miscited *City Nat'l Bank v. General Coffee Corp. (In re General Coffee Corp.),* 828 F.2d 699 (11th Cir.1987) as "holding" that § 544(a) brings trust property into the estate notwithstanding § 541(d). (*Trustee's Memo,* at 9.) The court in that case reached the opposite conclusion. *See In re General Coffee Corp.,* 828 F.2d at 705–06. The plaintiff also cited *Monfort, Inc. v. Kunkel (In re Morken),* 182 B.R. 1007 (Bankr.D.Minn. 1995). That case involved a dispute between a reclamation creditor and a secured creditor and did not concern §§ 541(d) or 544(a).

or-contractor's right to bring an action to recover the trust funds is a power that the debtor may exercise *solely* for the benefit of another entity.

Section 541(b) is derived from § 70a(3) of the former bankruptcy act. The latter provided that the trustee was vested "with powers which he [the bankrupt] might have exercised for his own benefit, but not those which he might have exercised solely for some other persons." 5 ALAN N. RESNICK & HENRY J. SOMMER, COLLIER ON BANKRUPTCY ¶ 541.19, at 541–93 (15th ed. rev. 2004) ("COLLIER"). The classic example of an excluded power is the debtor's power of appointment under a will that prohibits the appointment to the debtor or his estate. 1 EPSTEIN § 2–8, at 48; *see* 5 COLLIER ¶ 541.19, at 541–94. On the other hand, if the debtor can exercise the power of appointment for his own benefit, the power vests in the estate notwithstanding § 541(b)(1). CHARLES JORDAN TABB, THE LAW OF BANKRUPTCY § 5.9, at 303 (1997).

Two reported cases have considered whether the debtor's right to bring a representative action under the Lien Law passes to the estate, and both support the moving defendants' position. In *Beckerman v. Tummolo*, 63 A.D.2d 818, 406 N.Y.S.2d 398 (N.Y.App.Div.1978), a case decided under the former bankruptcy act, the court acknowledged that § 77(1) of the Lien Law granted an owner-trustee the power to enforce the trust through a representative action brought on behalf of the beneficiaries. Nevertheless, it observed that under § 70a(3) of the former bankruptcy act, 11 U.S.C. § 110(a)(3) (repealed), the bankruptcy trustee did not succeed to powers of the bankrupt that

were exercisable solely for the benefit of other persons, *id.* at 399, implying that former § 70a(3) checked the trustee's power to sue under the Lien Law.[12] *Id.* at 399–400. In *Ris v. Coppotelli (In re Colby Constr. Corp.)*, 76 B.R. 50 (Bankr.S.D.N.Y. 1987), a Bankruptcy Code case, former Bankruptcy Judge Howard Buschman reached the same conclusion on similar facts. Citing *Beckerman*, he ruled that the power to bring a representative action for the benefit of the trust beneficiaries fell squarely within the § 541(b)(1) exclusion. *Id.* at 53.

The plaintiff acknowledges that his right to bring the action "is not clear under § 541." (*Trustee's Memo*, at 17.) He nonetheless invites the Court to ignore the language of § 541(b)(1), and allow him to prosecute the Lien Law claim to recover the trust funds:

> The Trustee respectfully disagrees with Judge Buschman's conclusion that § 541(b) would preclude the Article 3–A causes of action if the estate would not benefit from those causes of action, particularly in light of the amendments to § 541(d), the express language of § 77(1) permitting a trustee to bring such an action and the public policy underlying the N.Y. Lien Law.

(*Id.* at 19.)

The plaintiff never argued that § 541(b)(1) was ambiguous or that Judge Buschman misread its plain meaning. If the statute is unambiguous and its meaning is plain, the Court must enforce it according to its terms. *See United States v. Ron Pair Enters.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) ("[W]here ... the statute's language is

---

12. In addition, the concept of property of the estate under the bankruptcy act was more limited, and only rights that were transferable or leviable passed to the trustee. The *Beckerman* court held that neither the right to bring

the representative action nor the underlying trust funds were subject to levy by the bankrupt's creditors. *Beckerman*, 406 N.Y.S.2d at 399.

plain, 'the sole function of the courts is to enforce it according to its terms.' ") (quoting *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917)). This effectively ends the plaintiff's argument.

■ Lastly, his proffered reasons for ignoring the terms of § 541(b)(1) prove unconvincing. As discussed earlier, § 541(d) is irrelevant because the plaintiff is not seeking to avoid an equitable interest. In addition, the express language of § 77(1) of the Lien Law must yield to the express language of 11 U.S.C. § 541(b)(1). Similarly, the public policy of New York cannot override the unambiguous language of the Bankruptcy Code regardless of the wisdom of that policy.

Strong countervailing policies also counsel against permitting the plaintiff to pursue the trust funds as the representative of the beneficiaries. Although administrative expenses should be kept at a minimum, the plaintiff proposes to incur substantial professional fees to recover funds he concedes he must pay to the trust beneficiaries.[13] Neither the estate nor the unsecured creditors will benefit from the prosecution of the claim, and they should not be saddled with the costs.

Furthermore, the trust beneficiaries can bring a class action under § 77(1) of the Lien Law to vindicate their rights. The plaintiff has not explained why his representative action is superior to the class action, or why it promotes New York's public policy any better than a suit by the trust beneficiaries. In addition, a lawsuit prosecuted by the trust beneficiaries will shift the administrative costs from the estate to the parties that will benefit from any recovery.

■ Lastly, dismissal of the Third Claim resolves an inherent conflict in the plaintiff's position. As a bankruptcy trustee, the plaintiff owes fiduciary duties to the estate and its creditors. *See In re Ngan Gung Restaurant*, 254 B.R. 566, 570 (Bankr.S.D.N.Y.2000) ("A trustee has the statutory duty to protect and preserve property of the estate for the purpose of maximizing a distribution to creditors .... A trustee also owes a fiduciary duty to each creditor of the estate.") (citing *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 355, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985)). To further the estate's interest, the trustee should press the position that the Payments did not involve trust funds, and any recoveries must, therefore, be paid to the estate. On the other hand, a contractor-trustee suing on behalf of the trust fund claimants owes similar fiduciary duties to his *cestui que trust*. *See In re Phipps*, 217 B.R. 427, 432 (Bankr.W.D.N.Y.1998) ("[T]he statutory trust created by Article 3A of the Lien Law does create the type of fiduciary duty that is within the contemplation of 11 U.S.C. § 523(a)(4)."); *AMG Indus., Inc. v. A.J. Eckert Co.*, 279 A.D.2d 717, 719 N.Y.S.2d 192, 194 (N.Y.App.Div.2001) (a subcontractor serving as a trustee of an Article 3–A Trust under New York Lien Law "is required to act as a fiduciary manager of the fixed amounts provided for [its] operation"); *People v. Shin*, 181 Misc.2d 751, 692 N.Y.S.2d 894, 897 (N.Y.Sup.Ct.1999) ("Article 3–A of the Lien Law ... imposes on a contractor a fiduciary duty over funds received for the improvement of real property")(*dicta*). He should urge that the Payments were made with trust funds, and any recovery must be returned to the trust fund beneficiaries rather than the estate. The plain-

---

**13.** I assume that the plaintiff will also compute his maximum commission based on any payments made to the trust fund beneficiaries. *See* 11 U.S.C. § 326.

tiff has not explained how he proposes to avoid this conflict.

Accordingly, I conclude that § 541(b)(1) prohibits the plaintiff from suing for the sole benefit of the trust beneficiaries under Lien Law § 77(1). The next issue is whether the allegation regarding the use of trust funds estops the plaintiff from pursuing the alternative that the debtor made the Payments with its own funds.

## B. Inconsistent Pleading

FED.R.CIV.P. 8(e)(2), made applicable by FED. R. BANKR.P. 7008, governs inconsistent pleading. It states:

A party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. *A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds.* All statements shall be made subject to the obligations set forth in Rule 11. (Emphasis added.)

The liberal pleading provisions in Rule 8(e)(2) arguably conflict with the principle that a party is bound by the statements of fact alleged in his pleadings. *See Bellefonte Re Ins. Co. v. Argonaut Ins. Co.,* 757 F.2d 523, 528 (2d Cir.1985). If the plaintiff pleads contradictory facts in separate or alternative claims, is he bound such that each inconsistent allegation will defeat the other claim?

The seeming conflict was addressed and resolved by the Second Circuit in *Henry v. Daytop Village, Inc.,* 42 F.3d 89 (2d Cir. 1994). There, the plaintiff, a black woman,

was fired from her job allegedly for misrepresenting her husband's medical insurance coverage and filing duplicate insurance claims. *Id.* at 91–92. She sued her former employer for race discrimination, contending that the reason given for her firing was a pretext, and that white or male employees who faced similar accusations received more lenient treatment. *Id.* at 92.

The defendant moved for summary judgment. It argued that the plaintiff's second claim challenging the severity of her punishment amounted to a constructive concession of her misconduct, and precluded her from disputing the asserted reason for her firing. *Id.* The district court agreed, and also concluded that the employees who the plaintiff identified as having received more lenient punishment were not similarly situated. Accordingly, the district court granted the defendant's motion for summary judgment, and the appeal followed. *Id.* at 93.

The Court of Appeals reversed, pointing out two errors by the lower court: the plaintiff did not concede her own misconduct, but even if she did, she did not concede it with respect to all of her claims. *Id.* at 94. As to the second error, the Court stated that Rule 8(e)(2) allows a plaintiff to plead inconsistently, and the *inconsistency may lie with the* statement of the facts or the legal theories adopted. *Id.* at 95; *accord* 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE: CIVIL § 1283 (3d ed. 2004) ("Under Federal Rule 8(e)(2), a party may include inconsistent allegations in a pleading's statement of facts"). Consequently, a factual allegation in one claim should not be construed as an admission against another alternative or inconsistent claim. *Henry v. Daytop Village, Inc.,* 42 F.3d at 95; *accord Rodriguez–Suris v.*

*Montesinos*, 123 F.3d 10, 20 (1st Cir.1997) (Rule 8(e)(2) allows inconsistent positions in the pleadings, and "[e]specially at the early stages of litigation, a party's pleading will not be treated as an admission precluding another, inconsistent pleading"); *Molsbergen v. United States*, 757 F.2d 1016, 1019 (9th Cir.1985)("[A] policy which permits one claim to be invoked as an admission against an alternative or inconsistent claim would significantly restrict, if not eliminate, the freedom to plead inconsistent claims provided by Rule 8(e)(2)").

▮▮▮▮ Here, the First Amended Complaint seeks to recover the transfers on two bases. Paragraphs 20 and 21, which are incorporated in the First Claim, imply that the debtor used its own funds to make the Payments. According to the Third Claim, it used trust funds.[14] Although they are not expressly pleaded in the alternative, Rule 8(e)(2) allows the Court "to construe separate allegations in a complaint as alternative theories, at least when drawing all inferences in favor of the nonmoving party as [the Court must do on] motions to dismiss or for summary judgment." *Adler v. Pataki*, 185 F.3d 35, 41 (2d Cir.1999). As long as each claim is legally sufficient standing alone, the facts alleged in one claim will not be treated as binding admissions to defeat an alternative claim that does not incorporate the inconsistent allegations.

The allegation in the Third Claim (which is being dismissed) that the Payments were made with trust funds is not incorporated in the First Claim. The moving defendants have not argued that the First Claim is legally insufficient for any other reason, and hence, have not offered a sound reason why it should be dismissed. Accordingly, the First Claim will not be dismissed, and more generally, the plaintiff may pursue the alternative theory that the transfers did not involve trust funds.[15]

The authorities relied on by the moving defendants do not dictate a different result. Neither *Bellefonte*, 757 F.2d 523, nor *Miramax Film Corp. v. Abraham*, No. 01 Civ. 5202(GBD), 2003 WL 22832384 (S.D.N.Y. Nov.25, 2003), considered or mentioned Rule 8(e)(2). In addition, the statement in a footnote in *Astroworks, Inc. v. Astroexhibit, Inc.*, 257 F.Supp.2d 609, 616 n. 10 (S.D.N.Y.2003), to the effect that factual allegations alone "determine whether a pleader has made a binding admission," (*see Reply of Di Lido Beach Resort, Ltd. [etc.]*, dated Dec. 6, 2004, at 3 (ECF Doc. #23)), was *dicta*.[16] In any event, *Daytop Village* forecloses the argument by the moving defendants that the

---

14. The debtor may have used its own funds to make a portion of the Payments and trust funds to pay the balance. The former Payments would come within the First Claim and the latter would fall under the Third.

15. On a separate point, the Second Claim did not even challenge the Payments. Instead, it charged that the execution of the Guaranty at the time of the initial construction agreements was a fraudulent transfer. Di Lido's moving memorandum erroneously stated that "all of the claims seek recovery of trust funds which are not property of the estate," (*Memorandum of Law of Di Lido Beach Resort, Ltd. In Support of its Motion to Dismiss the Complaint*, dated Oct. 25, 2004, at 2) (ECF Doc. #11), and Di Lido failed to identify any other problem with the sufficiency of the Second Claim.

16. *Astroworks* also cited *Albert v. Carovano*, 851 F.2d 561, 571 n. 3 (2d Cir.1988) (*en banc*) as support, but the referenced citation actually stated a different proposition; the failure in a complaint to cite a statute or the correct statute does not affect the merits of the claim because "[f]actual allegations alone are what matters." The District Court also cited *Bellefonte* for the proposition that a plaintiff cannot plead inconsistent facts because facts are binding admissions. As noted, *Bellefonte* did not address inconsistent pleading under Rule 8(e)(2).

plaintiff's inconsistent factual allegations in alternative claims results in a binding admission or mandates the dismissal of the entire First Amended Complaint.

■ On the other hand, the additional argument raised by Marriott, Ritz and Luxury shows how inconsistent allegations can lead to the dismissal of a claim. The plaintiff alleged, as facts common to all claims, that Di Lido was the initial transferee of the payments. (¶¶ 20–20.) He incorporated those allegations into the Ninth, Tenth and Eleventh Claims asserted, respectively, against Marriott (¶ 82), Ritz (¶ 85), and Luxury (¶ 88). Each of those claims also alleged that the particular defendant was the initial transferee. (*See* ¶¶ 83–84 (Marriott), 86–87 (Ritz), 89–90 (Luxury).) In contrast to the alternative claims discussed above, the plaintiff's inconsistent allegations appear in the *same* claim, and are self-defeating. *See Rieger v. Drabinsky (In re Livent, Inc. Noteholders Sec. Litig.)*, 151 F.Supp.2d 371, 407 (S.D.N.Y.2001) (Rule 8(e)(2) does not grant a plaintiff "license to plead inconsistent *assertions of facts* within the allegations that serve as the factual predicates for an independent, unitary claim") (emphasis in original).

■ The plaintiff conceded at oral argument that the Ninth, Tenth and Eleventh Claims could not stand as pleaded, and requested leave to replead them as separate, alternative claims without incorporating the allegations that Di Lido was the initial transferee. The request is granted as leave to amend should be freely granted when justice so requires. FED. R.CIV.P. 15(a). The plaintiff is entitled to pursue alternative theories regarding the identity of the initial transferees, consistent, of course, with the requirements of FED. R. BANKR.P. 9011.

## CONCLUSION

The motions to dismiss the Third Claim are granted, and the motions to dismiss the Ninth, Tenth and Eleventh Claims are granted with leave to replead within ten days of the order that the plaintiff is directed to settle on notice to the other parties. The motions to dismiss are otherwise denied.